MITCHELL *against* WARNER.

| | |
|---|---|
| 5 | 497 |
| 58 | 116 |
| 5 | 497 |
| 73 | 245 |
| 5 | 497 |
| 175 | 122 |
| 75 | 123 |

The covenants of seisin and against incumbrances, in a deed of land are personal covenants, not running with the land; if false, they are broken instantaneously on the delivery of the deed; and being so broken, they became *choses in action:* they cannot, therefore, be assigned.

An averment in an action on the covenant against incumbrances, that *the estate is not free from all incumbrances,* is not a sufficient assignment of a breach of that covenant; the law requiring the incumbrance to be set forth specifically, to apprize the defendant of its nature, and to enable him to prepare for his defence.

The general warranty in our deeds of land, is, in its nature, a covenant real, which runs with the land conveyed, descends to heirs and vests in assignees.

The subject of such covenant is confined to lands and tenements, excluding such hereditaments as do not embrace lands and tenements.

Water is neither land nor tenement.

The covenant of warranty extends to estates of freehold only.

To constitute a breach of such covenant, an eviction is indispensably necessary.

An entry on land to take water, and the actual taking of it, do not constitute an eviction.

*Litchfield,*
June,
1825.

Mitchell
*v.*
Warner.

The diversion of water from water-works, thereby rendering them useless, does not constitute an eviction.

Therefore, where the plaintiff in an action on the covenant of warranty, alleged, as a breach, that before the execution of the deed, one *W.* was well seised and possessed of the right of turning the water of a certain brook, which ran through the land conveyed, and was of great use in carrying a carding-machine and other water-works, which the plaintiff had erected thereon ; and that *W.*, in virtue of such right, entered on the land conveyed, and took the water therefrom, and turned it on to his meadow, to water the same ; by reason of which the plaintiff lost the benefit of said stream of water, and the use of the carding-machine and other water-works there erected ; and so *W.* dissersed and dispossessed the plaintiff of said water-works and the benefit of said stream ; it was held, 1. that the covenant declared on did not extend to the subject matter specified ; and 2. that the breach was not well assigned.

It seems, that the covenant of quiet enjoyment is governed by the same rules, in relation to its extent and breach, as the covenant of warranty.

It seems also, that a pre-existing right in a third person to take water from the land conveyed, is a breach of the covenant against incumbrances.

This was an action on the covenants of warranty in a deed of land. The plaintiff declared, that the defendant, *Curtis Warner,* on the 30th of *May,* 1817, for the consideration of 1500 dollars, by his deed duly executed, granted and sold to *George Welton* a certain piece of land in said deed described as lying in *Roxbury,* on *Jack's* brook, containing two acres, with a dwelling-house, clothier's works, &c. standing thereon, bounded *South* on *Roswell Warner's* land, &c.; that in and by said deed, the defendant did, for himself, his heirs, executors and administrators, covenant with said *Welton,* his heirs and assigns, that at and until the ensealing of said deed, he was well seised of the premises as a good indefeasible estate in fee-simple, and that he had good right to bargain and sell the same, in the manner and form as was in said deed by him before written, and that the same was free from all incumbrances; that the defendant, in and by said deed, did covenant and bind himself and his heirs forever to warrant and defend said granted and bargained premises to the said *Welton,* his heirs and assigns, against all claims and demands whatsoever; that on the 7th of *March,* 1822, *Welton* and the defendant, by a quit-claim deed, by them executed, for a valuable consideration, released to the plaintiff the same land, buildings and privileges, which the defendant had conveyed to *Welton,* by the first mentioned deed, and the plaintiff became vested with such right and title thereto as *Welton* had acquired, and was the assignee of all the covenants in the defendant's deed to *Welton,* and had good right to take benefit thereof. Breaches of these covenants were then assign-

ed as follows: That at the time when the defendant made and executed his deed to *Welton*, he, the defendant, was not well seised of the premises, as a good indefeasible estate in fee-simple, and had not good right to bargain and sell the same, in manner and form as stated and set forth in said deed, and the same was not free from all incumbrances; that the defendant has not kept and performed his covenant to warrant and defend the premises to the plaintiff, but has broken the same, for that long before and on the 30th day of *May*, 1817, and at the time when the defendant made, executed and delivered his deed to *Welton*, one *Roswell Warner* was well seised and possessed, in his own right in fee-simple, of the right and privilege of turning the water of *Jack's* brook in said deed mentioned, (and which brook or stream of water runs through and upon said land, and was, at the time of the conveyance by the defendant to *Welton*, and ever since has been, of great use in carrying on the business of a clothier's shop in said deed described, also of great value and use in carrying a carding-machine and other water works, which the plaintiff has, since he took the deed from *Welton* and the defendant, erected on said land, and by said stream,) from a certain dam, which had been previously erected across said brook upon said land, on to the meadow of said *Roswell Warner* below, so much thereof as should be necessary for the purpose of watering the same; that on the 1st of *April*, 1822, said *Roswell Warner*, by virtue of such right and privilege, entered upon said land, and diverted the water from said stream, at said dam, and turned it upon his said meadow, to water the same, and has ever since used said stream for that purpose; by means whereof, the plaintiff has wholly lost the benefit of said stream, and the use of said clothier's shop, carding machine and other water-works thereon; and so the said *Roswell Warner* has disseised and dispossessed the plaintiff of said water-works and of the benefit of said stream.

The defendant pleaded, that at the time of executing said deed to *Welton*, he, the defendant, was well seised of the premises in said deed described, and had good right to convey the same, as is in said deed set forth; that the premises were free from all incumbrances whatsoever; and that the defendant has warranted and defended the premises to the plaintiff against all claims and demands, according to the form and effect of said deed, and of the several covenants therein contained. On this plea issue was joined.

On the trial of the cause at *Litchfield, February* term, 1824, before *Hosmer,* Ch. J. the plaintiff, after proving the deeds mentioned in the declaration, adduced evidence to prove the right of *Roswell Warner* to turn the water of *Jack's* brook on to his own land, and the exercise of that right to the plaintiff's damage, which constituted the only breaches relied upon of the covenants in the defendant's deed to *Welton.* To the competency, as well as to the relevancy of this evidence, the defendant objected. The Chief Justice, in his charge to the jury, expressed the following opinion: "First, as to the covenant of seisin. The facts adduced in evidence did not prove it to have been broken; the right claimed to exist in *Roswell Warner* being an incorporeal hereditament only, and like a right of way or of turbary, not any part of the freehold, but perfectly compatible with the covenant of seisin, on which the plaintiff has declared.

"Secondly, as to the covenant against incumbrances. The declaration having alleged, by way of breach, that the premises granted 'were not free from all incumbrances,' and nothing more, under this negative averment, without any specification of the nature of the incumbrance complained of, the proof offered was inadmissible. It should have been definitely set forth, to appraise the defendant of its nature, and give him the requisite information to prepare himself for a defence. Further; the actual exercise of the right of turning water from *Jack's* brook, by *Roswell Warner,* was not an incumbrance warranted against; but the incumbrance consisted in the incorporeal hereditament, *viz.* the right of turning the water; the covenant, from its nature, being broken instantaneously, on the delivery of the deed, or not at all. And if the exercise of the right were an incumbrance, it was not alleged to be so in breach of the covenant aforesaid.

"Thirdly, as to the covenant of warranty. The facts stated, by the plaintiff, if proved, did not amount to an eviction in breach of the aforesaid covenant; but if they were established, by the evidence, the jury must find for the plaintiff, and leave the defendant to his legal remedy, the facts appearing on the record.

"Fourthly, as to the damages. As no breach of the covenant of warranty was alleged, but of a disturbance only, the jury must give the plaintiff reasonable damages for the actual injury."

The jury returned a verdict for the plaintiff, with twenty

dollars damages. The defendant then moved in arrest of judg-ment. for the insufficiency of the declaration; and the court ar-rested judgment on that ground. To obtain a reversal of the latter decision, the plaintiff brought a writ of error. He also moved for a new trial, on the ground of a misdirection.

At the term of this Court, at *Litchfield*, in *June*, 1824, the questions arising on the writ of error and on the motion for a new trial, were argued, by *Bacon* and *T. Smith*, for the plain-tiff, and by *D. S. Boardman* and *J. W. Huntington*, for the de-fendant. *Chapman*, J. being absent, and the other Judges not being unanimous in relation to the nature and extent of the covenant of warranty, the writ of error was continued to the present term, to be argued again on that point.

In support of the motion, it was contended, 1. That the de-fendant was *liable* upon the covenants of seisin and against in-cumbrances. The objection is, that these covenants are in words of the present tense, and are broken immediately, if ever; and consequently, that they are not assignable. But whatever support for this position may be derived from some decisions in one or two of our sister states, a different rule is established in *England*. *Kingdon* v. *Nottle*, 1 *Mau. & Selw.* 355. Same parties in another case, 4 *Mau. & Selw.* 55. *King* v. *Jones* & al. 5 *Taun.* 418 S. C. 1. *Marsh.* 107. *Noke* v. *Awder, Cro. Eliz.* 373. The courts say, that the covenant runs with the land; that so long as the grantor has not a good title, there is *a con-tinuing breach :* that although, according to the letter, there is a breach as soon as the covenant is made, yet according to the spirit, the substantial breach is, when the covenantee or his as-signee loses the fruit of the covenant; in other words, when the injury arising from the breach accrues. The *English* rule ought to be adopted, in relation to these covenants, for the fol-lowing reasons. First, they are, in the very terms in which they are expressed, covenants not with the covenantee alone, but likewise with his *heirs* and *assigns.* Secondly, they relate to *land ;* and are, therefore, *covenants real.* Thirdly, the princi-ple is of the utmost importance to constitute an adequate muni-ment of title. It is in vain to say, that covenants may be taken, by the grantee, from his immediate grantor; for he may be a bankrupt; or the title may be acquired by the levy of an exe-cution; or by purchase from trustees, executors or administra-tors, where covenants are not given.

2. That the breach of the covenant against incumbrances, is *sufficiently assigned* in the declaration.

On the other side, it was contended, 1. That the plaintiff could not recover on the covenant of *seisin.*

First, the plaintiff claims *as assignee.* But this covenant was broken on the delivery of the deed from the defendant to *Welton,* or not at all ; and became, in his hands, a mere *chose in action.* It was, therefore, unassignable ; and no action could be maintained upon it, except by the covenantee, and his legal representatives. *Marston* v. *Hobbs,* 2 *Mass. Rep.* 433. *Greenby & al.* v. *Wilcocks,* 2 *Johns. Rep.* 1. *Hamilton* v. *Wilson,* 4 *Johns. Rep.* 72. *Kane* v. *Sanger,* 14 *Johns. Rep.* 89. 93. 1 *Swift's Dig.* 370. *Lewes* v. *Ridge, Cro. Eliz.* 863.

Secondly, if the defendant was not seised, when he made his deed to *Welton,* then *Welton* got no interest in the land ; and of course, he assigned none to the plaintiff; and there was nothing for the covenant of seisin to attach to, in his hands. *Bickford* v. *Page,* 2 *Mass. Rep.* 455. 1 *Swift's Dig.* 53.

Thirdly, the acts complained of are entirely compatible with the seisin of the defendant, and incompatible with the allegation that he was not seised. The right in *Roswell Warner* constituted no breach of the covenant in question, in the first place, because it was a mere incumbrance ; and in the next place, because the only rule of damages, *viz.* the consideration money and the interest, is utterly inapplicable to it. Is the plaintiff, who is well seised of all the freehold, because a right to divert a part of the water exists in another, to recover damages as though he were not seised of any part of it ?

2. That the plaintiff could not recover on the covenant *against incumbrances.*

First, the breach is not well assigned. The incumbrance should have been specially stated ; because this covenant does not extend to *all* incumbrances ; and of course, a general assignment does not necessarily shew a breach. Besides, the defendant being ignorant of the nature of the incumbrance, cannot be prepared to defend against it. 1 *Swift's Dig.* 666. *Marston* v. *Hobbs,* 2 *Mass. Rep.* 437. 2 *Wms. Saund.* 181. *b. Anon. Com. Rep.* 228. *Hammond* v. *Hill, Com. Rep.* 180. *Foster* v. *Pierson,* 4 *Term Rep.* 617. 2 *B s. & Pull.* 14. n. (*a*). *Kirby* v. *Hansaker, Cro. Jac.* 315. *Fraunces's* case, 8 *Co.* 89. *b. Target* v. *Lloyd,* 2 *Vent.* 278. 4th *Res. Com. Dig. tit.* Pleader. C 47. 49.

Secondly, this covenant does not extend to the act claimed to have been done,—the drawing of the water. It extends no fur-

ther than to the *right* of doing so ; and this, if broken at all, is broken immediately, and does not pass to the assignee.

Thirdly, if the exercise of the right were an incumbrance, the pleader has not alleged it so to be in breach of the covenant against incumbrances. If the incumbrance must be pointed out, as has been shewn, it follows necessarily, that it must be *in breach of the covenant.* To state an incumbrance, without averring it to be in breach of the covenant, is to allege no breach of the covenant.

HOSMER, Ch. J. The case made by this motion, presents two questions for determination.

The first is, whether the plaintiff, claiming to be the assignee of the covenant of seisin, can maintain an action on that covenant.

This covenant, from its nature, is broken *instantaneously* on the delivery of the deed, or it is never broken. It runs in the words of the *present* tense, and asserts, that the grantor *is well seised.* Now, if he is well seised according to his covenant, the agreement is fulfilled ; and if he is not well seised, the covenant is false, and immediately broken. It follows from this, that it is a personal covenant, which, most clearly, *never runs with the land,* and that the grantee, *in whose time the breach existed,* can alone sue upon it ; for, after a breach the cause of action can never be assigned. It would be the assignment of a *chose in action,* which the common law will not permit. That the covenant of seisin, if false, is broken as soon as it is made, appears from *Shep. Touch.* 170. ; from *Bickford* v. *Page,* 2 *Mass. Rep.* 460. ; from *Marston* v. *Hobbs,* 2 *Mass. Rep.* 437. ; from *Bennett* v. *Irwin,* 3 *Johns. Rep.* 365. ; from *Abbott* v. *Allen,* 14 *Johns. Rep.* 253. ; from *Greenby* & al. v. *Wilcocks,* 2 *Johns. Rep.* 1. ; from *Pollard* & al. v. *Dwight* & al. 4 *Cranch* . ; from 1 *Swift's Dig.* 370. ; and from *Mitchell* v. *Hazen,* 1 *Conn. Rep.* 495. From its nature, it does not run with the land, as none but real covenants do ; and these are always suspended on some act *posterior* to the delivery of the deed. Hence, as I have said before, having been broken, the covenant has become a *chose in action,* and therefore cannot be assigned. 1 *Swift's Dig.* 370. In *Bickford* v. *Page,* 2 *Mass. Rep.* 455. it was said by the court : " This covenant being broken before the release, was, at that time, a mere *chose in action,* and unassignable." The court, in the case of *Greenby* & al. v. *Wilcocks,* 2 *Johns. Rep.* 1. determined, that the assignee of a covenant of

*Litchfield,*
June,
1825.

Mitchell
*v.*
Warner.

seisin could not recover. The opinion was delivered by *Spencer*, J., in which he says : " *Choses in action* are incapable of assignment at the common law ; and what distinguishes these covenants, broken the instant they were made, from an ordinary *chose in action ?* The covenants, it is true, are such as run with the land ; but here the *substratum* fails, for there was no land whereof the defendant was seised, and of consequence, none that he could aliene : the covenants are, therefore, naked ones, uncoupled with a right to the soil." The same point was adjudged as far back as the reign of Queen *Elizabeth*, in *Lewes* v. *Ridge, Cro. Eliz.* 863 ; and the case, so far as I can find, has never been overruled. The principle settled in that case, was this ; that an assignee shall not have an action upon a breach of covenant before his own time. The same principle was recognized in *Marston* v. *Hobbs*, 2 *Mass. Rep.* 439. ; in the determination of which case, it was said by *Parsons*, Ch. J., when delivering the opinion of the court ; that " no estate passed, to which these covenants (*i. e* of seisin and right to convey) could be annexed, because in fact broken before any assignment could be made, they were *choses in action*, and not assignable." In *Com. Dig. tit.* Covenant B 3 it is asserted, that " covenant does not lie by an assignee, for a breach done before his time." It cannot run with the land ; for nothing having been conveyed, what land is there for it to run with ? To the same effect is *Lucy* v. *Levington*, 2 *Lev.* 26. S. C. 1 *Vent* 175. in which it was decided, that for a breach of the covenant of quiet enjoyment in the testator's time, the executor was authorized to recover ; and of his opinion was that eminent judge Sir *Matthew Hale*. Similar doctrine is to be found in the *Digest* of Baron *Comyns, tit* Covenant. B. 1.

In relation to principles so well established, one or two modern decisions in *Westminster-Hall* in opposition to them, however they might there be regarded, ought not here to be considered as of any authority. Such decisions have been cited.— The first of them is the case of *Kingdon* exr. v. *Nottle*, 1 *Mau. & Selw.* 355. The defendant had conveyed to *Richard Kingdon*, the testator, certain property, and covenanted that he was seised of it, and had good right to convey It was averred as a breach, that he was not seised of the premises ; and the court adjudged, that the executor could not sue on the covenant, without shewing special damage to the testator, but that the heir might. It was said by Lord *Ellenborough*, that " the covenant, it was true, was broken, but that there was no damage sustained

*Litchfield*,
June,
1825.

Mitchell
*v.*
Warner.

in the testator's life-time." To this observation of that learned and able judge I cannot subscribe. The covenant being broken the instant it was made, the damage, most obviously, was the whole consideration paid ; and I am at a loss to conceive what other or further damage could arise. In the surrounding states, as well as in our own, it is unquestionably established, that the damage is the consideration paid ; and that this is immediate on the delivery of the deed. This, then, is the first objection to the determination, that whatever may be the law of *Westminster-Hall*, the damage, in the case alluded to, is justly considered as *not nominal*, but *real*, and indeed all that the party can experience. It is *the whole consideration paid.* This principle alone shews, that the determination in *Kingdon* v. *Nottle* is inapplicable to us ; and it likewise authorizes the assertion, that Lord *Ellenborough* and his associates, had they resided in *Connecticut*, and there pronounced their opinion, would have decided the case before them differently from what they have.

To the determination in *Kingdon* v. *Nottle* there is a sound objection. It is opposed to principles, uniformly, and for centuries, established in *Westminster-Hall*. It was said by Lord *Ellenborough*, in the case alluded to, that "if the executor could recover nominal damages, it would preclude the heir, *who is the party actually damnified*, from recovering at all !" The force of this reasoning depends entirely on the assertion that the heir is " the party actually damnified ;" and if this is an incorrect position, the argument wholly fails. Now, it is not true, that the heir is the party damnified. The damage arises entirely by the breach of the covenant in the life-time of the testator ; and the *testator* is the only person, who receives damage. Thus were all the determinations before the last mentioned decision. To this effect was *Lewes* v. *Ridge, Lucy* v. *Levington*, and the law as laid down in *Comyns' Digest ;* and not a case or *dictum* was there to the contrary. Indeed, the admission of Lord *Ellenborough*, that the covenant was broken in the life-time of the testator, most conclusively shews, that the heir was not damnified. His own damage must result from his title to the land, and not from the covenant broken, to which he was no party. Now, as to the land, the heir never had title ; nor had his ancestor. The complaint is, that the grantor was not seised, and had conveyed no title. How, then, is it possible, that the heir should inherit land, to which his ancestor had no title ? If, then, he had no title to the estate supposed to be conveyed,

*Litchfield*,
June,
1825.

Mitchell
*v.*
Warner.

and he was no party to the covenant, and the breach happened before his ancestor's death, what is the ground of his claim? In my opinion, none. On the other hand, as the covenant was broken in the testator's life-time, and the damage resulting from the breach was due to him; after his death, his executor, standing in his place, had the right of suit. For the principle is incontrovertible, that where the testator can maintain covenant in his life-time, on a cause of action then existing, his executor may support the same action after his death. 1 *Swift's Dig.* 371. *Toll. Ex.* 158. 432.

Another writ of covenant was brought by *Kingdon*, as devisee, against *Nottle*, 4 *Mau. & Selw.* 53. upon the covenant of seisin before-mentioned, on the ground that the covenant run with the land, and that the breach happened to the devisee. Consistently with the former determination, the court decided in favour of the plaintiff. It required some ingenuity to sustain an action on a covenant, for a breach happening in the time of the testator, before the devisee, (the plaintiff) could have any interest in the covenant; and more especially, as no special damages were laid. For it was not stated in the case, that the plaintiff was, at any time, interrupted or disturbed in the enjoyment of the premises; or that he sustained any damages, by the breach of the covenant, in the testator's life-time. Accordingly, this point was met, by Lord *Ellenborough*, who said: " The covenant passes with the land to the devisee, and has been broken in the time of the devisee; for so long as the defendant has not a good title, there is *a continuing breach*, and it is not like a covenant to do an act of solitary performance, but it is in the nature of a covenant to do a thing *toties quoties*, as the exigency of the case may require." From this opinion I am compelled to dissent *in omnibus*. First, I affirm, that the novel idea attending the breach in the testator's life-time, by calling it " a continuing breach," and therefore a breach to the heir or devisee at a subsequent time, is an ingenious suggestion, but of no substantial import. Every breach of a contract is a continuing breach, until it is in some manner healed; but the great question is, *to whom* does it continue as a breach? The only answer is, *to the person, who had title to the contract, when it was broken*. It remains, as it was, a breach to the same person, who first had a cause of action upon it. If it be any thing more, it is not a continuing breach, but a new existence. In the next place, I assert, that it is like a covenant to do an act of solitary performance; and for this plain reason, that it is, in its

*Litchfield,*
June,
1825.

Mitchell
*v.*
Warner.

nature, a covenant for a solitary act, and not a successive one. If the covenant is broken, that is, if the grantor was not seised, it is infracted to the core ; and a second supposed breach is as futile as the imaginary unbroken existence of a thing dashed in pieces. It has no analogy to a covenant to do a *future* act, at different times, which may undergo repeated breaches. It has no futurition ; and cannot be partly broken and partly sound ; but the grantor is seised, or not seised ; and therefore, the covenant is inviolate, or violated wholly. Not further to pursue the subject, I remark, that, in my judgment, the case of *Kingdon* v. *Nottle* may justly be said to authorize the assignment of a *chose in action* by devise ; a supposition as unfounded as it is novel.

I, therefore, conclude, that the determinations in the above mentioned cases of *Kingdon* v. *Nottle,* are against the antient, uniform and established law of *Westminster-Hall ;* against well settled principles and decided cases in the surrounding states ; and that the judges pronouncing them, would have been of an opinion different from the one expressed, had they recognized the principle here well established, that the breach of the covenant of seisin is, in its nature, *total,* and the measure of damages the whole consideration money paid for the land. As a consequence, I am of opinion that the plaintiff cannot sustain his action on the covenant of seisin.

2. The next question relates to the covenant of freedom from incumbrances.

The deed of the defendant to *George Welton* contains a covenant of this description ; and the plaintiff claims title to the covenant, and a right to recover for a breach of it, by virtue of a deed of quit-claim from the defendant and *Welton.* Without a further statement of fact, it is sufficient to remark, that the plaintiff has no right to recover for the breach of this covenant ; and if he had, no breach of it is assigned.

First, he has no title to the covenant of freedom from incumbrances, nor right to recover for the breach of it. His only claim is founded on the principle, that this covenant *runs with* the land. In opposition to this claim, I observe, that the covenant above-mentioned was *personal,* and not a real covenant ; that it was broken in the testator's life-time, and could not run with the land,—a peculiarity attending real covenants only ; and of consequence, that *George Welton* is the only person who can sue on this unassignable contract.

This covenant is classed, by the late Chief Justice *Swift,* (in

Litchfield,
June,
1825.

Mitchell
v.
Warner.

the first volume of his *Digest*, *p.* 370.) with the covenant of seisin and of good right to convey; and in relation to them all, he correctly says: "These covenants must be all broken at the time of executing the deed, or they never can be; for if at that time, the grantor is not well seised of the premises, as an indefeasible estate, or if he had no right to sell, or if *any incumbrance existed*, then the covenants are broken. But if the grantor is seised, has right to sell, or there are no incumbrances at the time of making the deed, then these covenants can never be broken; for no subsequent act can be done, by the grantor, which will amount to a breach of them; as he can do no act, that will affect or incumber the estate. These covenants, of course, cannot be *real* covenants; for being broken at the instant of their creation, they are *choses in action*, and cannot be assigned. The distinguishing feature of the real covenant, is, that it may be broken *at a future time;* and it is this quality, which renders it assignable; but it must be assigned *before it is broken;* for when once broken, the right to recover damages, is a *chose in action*, which cannot be assigned." With these observations I entirely concur. The fundamental question, on which the whole doctrine depends, is, when is the covenant of freedom from incumbrances broken? It is a covenant for a fact, existing, or said to exist, not *in futuro*, but *in presenti;* at the moment when the deed is delivered. The phraseology of the covenant is, that the premises *are* free from incumbrances; not that they shall *in future* be free; just like the expression the grantor *is* seised, and *has* good right to convey. If the covenant be true, it can never be broken; if it be false, it is broken immediately, in which event it is a *chose in action*, and cannot be assigned. The doctrine contended for was adjudged, by the supreme judiciary of *Massachusetts*, in *Prescott* v. *Trueman*, 4 *Mass Rep.* 627. and by the supreme court of *New-York*, in *Delavergne* v. *Norris*, 7 *Johns. Rep.* 358.

Secondly, no breach of the covenant in question has, by the plaintiff, been assigned. The averment is merely this—that the estate "is not free from all incumbrances." It is sufficient to say, that the law requires the incumbrance to be specially named and set forth; or the defendant will always be taken by surprise. Incumbrances, in their nature, are numerous. A mortgage, a way, a right to dig turf, to pasture cattle, or to have dower assigned, and, in short, an easement of any kind, is an incumbrance, because it is a load or weight on the land, and must lessen its value. *Prescott* v. *Trueman*, 4 *Mass. Rep.* 630. It

is opposed to the fundamental principles of pleading, (which are to inform the court, the jury, and, above all, the party, by the altercations in writing) to authorize a general allegation that there are incumbrances, without declaring what they are. The point is settled, by first principles, and is too clear for controversy. In *Marston* v. *Hobbs*, 2 *Mass. Rep.* 433. it was said, by Chief Justice *Parsons*, that the breach of the covenant against incumbrances, like that for quiet enjoyment, must be specially assigned, shewing its nature, and the interruption complained of. The same point was adjudged, by the same court, *Bickford* v. *Page*, 2 *Mass. Rep.* 455; and in *De Forest* v. *Leete*, 16 *Johns. Rep.* 122. it was said, by the supreme court of *New-York*, that under a general assignment of a breach of the covenant against incumbrances, the plaintiff cannot give evidence of his having bought in an incumbrance, because it was not specifically alleged in the declaration; and for the admission of such evidence, a new trial was granted.

The charge of the judge to the jury, in this case, is free from exception. The covenant in question, as was said by him, is broken instantaneously, if ever, ; and under the negative averment of *not free from incumbrances*, the jury were correctly instructed, that proof of a particular incumbrance was inadmissible, because it should have been set forth specifically, to apprize the defendant of its nature, and give him the means of preparation for his defence.

PETERS, BRAINARD and BRISTOL, Js. were of the same opinion.

New trial not to be granted.

—————

At the present term, the questions presented by the writ of error, in relation to the covenant of warranty, were argued before a full Court, by *Bacon* and *T. Smith*, for the plaintiff, and by *Benedict* and *J. W. Huntington*, for the defendant.

For the plaintiff it was contended, That the jury having found all the material facts stated in the declaration, and, among other things, the entry of *Roswell Warner* upon the premises, under paramount title, and the diversion of the water, thereby *disseising* the plaintiff of the stream and the water-

works upon the premises; this constituted a breach of the covenant of warranty. The objection made by the defendant, is, that to constitute a breach of this covenant, it is necessary that the plaintiff should be *evicted;* and this, as a general proposition, is conceded; which raises the question, what acts amount to an eviction? The term, in its true meaning, implies *an entry under paramount title, so as to interfere with the rights of the grantee;* and this *satisfies* the term. The *object* of the party making such entry, is immaterial; whether it be to take all, or a part of the land itself, or merely an incorporeal right. In ascertaining the meaning of the term, it ought to be kept in mind, that its import is frequently conveyed, by other words; as " ouster, by paramount title ;" 2 *Mass. Rep.* 438, 461. 4 *Mass. Rep.* 442. 410; " possession by a person claiming and holding under an elder title, thereby preventing the entry of the grantee;" 2 *Wheat.* 61.; " an entry and disturbance; 2 *Johns. Rep.* 402. 3 *Term R p.* 587. 2 *Wms. Saund.* 178. *a.* 181. *b.* 14 *Johns. Rep.* 253. And where the term " eviction" is used in relation to this subject, it is manifestly not used in its technical sense, but as synonymous with *disturbance.* 14 *Johns. Rep.* 93. 2 *Johns. Rep.* 4. 15 *Johns. Rep.* 502. 2 *Wms. Saund.* 181. *b.* It was formerly supposed, that an eviction by *legal process* was necessary; (*Jacob's Law Dict. tit.* Eviction. 4 *Mass. Rep.* 352.) but the law is now settled otherwise. 1 *Swift's Dig.* 665, 6. *Booth* v. *Starr,* 5 *Day* 282. and the cases before referred to.

The next question regards the *subject* of disseisin. It will be claimed by the counsel for the defendant, that disseisin is predicable of *lands only.* The plaintiff's claim is, that there may be a dissesin of *tenements* and *hereditaments,* as well as of lands. A man may be disseised of any thing of which he is seised; disseisin being the putting of a man out of seisin. *Co. Litt* 153. *b.* Seisin is predicable of a *freehold;* which may be had not only in lands, but likewise in rights that are incorporeal. There may be a disseisin of rent, or other incorporeal right; and the party is entitled to the remedy of *novel disseisin. Co. Litt.* 153. *b.* 154. *a.* 159 *b.* 181. *a.* *Com. Dig. tit.* Seisin. F. 1. By the statute of *Merton,* it is provided, that if a man be disseised of his tenements, and recover them in an assise; if the disseisor enter again upon the premises, he shall have a writ of redisseisin, and shall recover double damages. This, it is said, extends to *incorporeal* rights. *Co. Litt.* 154. *a.* If he recover lands, and the disseisor again enter, and take an incorporeal right; it is a disseisin of that right within the sta-

tute; for it was tacitly recovered with the land, and the party evicted is entitled to the remedy provided. *Co. Litt.* 154. *a.* This proves that the taking of an incorporeal right, is an ouster or disseisin of the right. Incorporeal rights may be conveyed with warranty; not only things that lie in livery, but likewise things that lie in grant. *Co. Litt.* 366. *a.* In this case, the plaintiff was seised not only of the land, but also of the *stream of water;* and the entry of *Roswell Warner* evicted him from both.

What is necessary to constitute a *breach* of this warranty? A warranty extends to all things issuing out of land; and the warrantor is bound to secure it to the grantee in the same plight, and with all the rights and privileges that he purports to convey. *Shep. Touch.* 193. *Co. Litt.* 388. *b. Com. Dig. tit.* Garranty. F. But it is settled law, that when a man conveys land with warranty, he secures it against all lawful entries to enforce incorporeal rights. *Co. Litt.* 366. *b.* 393. *a.* 188. *b.* 2 *Co. Rep.* 48. *b.* 1 *Wms. Saund.* 322. *a.* n. 2. 5 *Day* 92. Entry to take an incorporeal right is a breach of the covenant of quiet enjoyment. *Lloyd* v. *Tomkies,* 1 *Term Rep.* 671. Entry to levy an execution is a breach. 6 *Vin. Abr. tit.* Covenant. L 7. *pl.* 1. *Pincombe* v. *Rudge, Yelv.* 139. A common recovery may be had of incorporeal rights. 5 *Cruise's Dig.* 330, 1, 2.

But if an eviction of land itself be necessary, this has been found by the jury. The plaintiff has stated not only a dissesin of the stream, but of the water-works upon the stream. If it be objected, that the title paramount, which the plaintiff has stated in his declaration, is a right of entry to take the water, not a title to the water-works; and therefore, if the plaintiff was disseised of the water-works, it was a tortious act, and lays no foundation for a recovery; the answer is, that the plaintiff has averred in his declaration, that by the entry of *Roswell Warner,* and diverting the stream, the water-works had been *rendered useless* to the plaintiff, to which is superadded an averment, that he has thus disseised the plaintiff of both. Where, by the taking of a part of the property, the remainder is rendered entirely useless, it is a disseisin of the whole. If a man should convey a house, and another should enter under paramount title, and disseise him of the lower rooms, so as to render the upper rooms entirely inaccessible, it would be a disseisin of the whole house; and the covenantor would be liable on the covenant of warranty for the whole. It is settled law, that a

*Litchfield,*
June,
1825.

Mitchell
*v.*
Warner.

*Litchfield,*
*June,*
*1825.*

*Mitchell*
*v.*
*Warner.*

disseisin of the water-course that runs to a mill, is a disseisin of the mill itself. *Co. Litt.* 161. *a.* So if a man be disturbed to enter and manure his land, it is a disseisin of the land itself. *Co. Litt.* 161. *a.* So the forcible hindering of another from tilling his land, is a disseisin of the land itself. *Jacob's Law Dict. tit.* Disseisin. *Roswell Warner* took a part of the land, and occupied it permanently, for a water-course; and the plaintiff was thereby disturbed in the use and cultivation of it. This was, therefore, a disseisin of the land itself.

The covenant of warranty in *Connecticut* is precisely equivalent to the covenant of quiet enjoyment. In *England,* they have substituted the latter covenant for the former, on account of the embarrassments that attend it. 4 *Cruise's Dig* 77. & *seq.* But the covenant in *Connecticut* does not possess one of the incidents of the *English* warranty. There is no voucher, in the *English* sense of the term; no recovery of recompense in value; and no warranty of charters. The circumstance that the covenant of quiet enjoyment is not usually inserted in our deeds, proves, that the covenant of warranty is considered as equivalent. 1 *Mass. Rep.* 467. 1 *Swift's Dig.* 665.

For the defendant it was contended, 1. That the covenant of warranty in the defendant's deed, did not extend to the *stream of water,* nor to the defendant's *water-works.* And here it was remarked, that it is not alleged or claimed, that *Roswell Warner* had any title to the *dam,* or to the *land* covered by the water, or to the *water-works,* which have been erected — These all belonged to the *plaintiff.* The only right of *Roswell Warner,* was that of the *use* of this water for a specific purpose.

The covenant of warranty embraces *lands* and *tenements,* but *not hereditaments,* except such as include the two former. This will be apparent, first, if we consider the *reason* of introducing the clause of warranty into the *English* charter of feoffment; which was to prevent the heir from entering upon the estate, if it had been aliened without his concurrence; which he might have done, had not this clause been inserted; and which was inserted even before the statute of *quia emptores.* 2 *Bla. Comm.* 301. *Co. Litt.* 373. It was, therefore, a security to the feoffee of property conveyed against the claim of the heir of the feoffor. But it is obvious, that the heir could enter only upon *lands* or *tenements,* or such *hereditaments* as included them. Secondly, the truth of the proposition is equal-

ly apparent, if we consider the *nature* of a covenant of warranty. It is a *real* covenant; which runs with the land, descends to heirs, and vests in assignees. *Co. Litt.* 365. *a.* 366. *Com. Dig. tit.* Garranty A. 3 *Cruise s Dig.* 49. 2 *Bla. Comm.* 304. *Booth* v. *Starr,* 5 *Day* 285. *Spencer's* case, 5 *Co. Rep.* 16. *a.* 10 *East* 130. It is inseparably united to the subject conveyed; and is a security for this subject. It is very clear, however, that an incorporeal hereditament, which is not a tenement, can have no real covenant running with it. Thirdly, a covenant of warranty extends only to estates of *freehold ;* but never to estates of any other description : of course, not to leases, of ever so many years, nor to goods and chattels. *Co. Litt.* 369. *a.* 365. *a.* 366. *a. Com. Dig. tit.* Garranty E. *Shep. Touch.* 184. 162. An estate of freehold is one, which requires livery of seisin at common law, or in incorporeal hereditaments, what is equivalent to it. *Litt.* sect. 59. 2 *Bla. Comm.* 104. Hence it follows, that a covenant of warranty, can extend only to those subjects, of which seisin is predicable ; and those are only lands or tenements; for a hereditament, if neither land nor tenement, is not real estate. Fourthly, the recompense for breach of warranty, was *other lands* of equal value. *Co. Litt.* 365. *a.*

The next proposition is, that a stream of water is neither land nor tenement, nor a right to divert and use it, a hereditament including either. *Co. Litt.* 4. *a.* 2 *Bla. Comm.* 16, 17. 1 *Cruise's Dig.* 1, 2. *Co. Litt.* 19, 20. *Burr. Sett. Ca.* 315. 4 *Term Rep.* 675. Two indispensible properties are connected with the legal terms, *land* and *tenement.* The first is, immobility ; the second is, permanency—*i. e.* which *may* always endure. If the subject has these two properties, it is either land or tenement. without them, it is not included in either.

Water is not *land ;* because it has none of the properties of land. First, water is a fluid; land, a solid substance. Secondly, no one can have absolute property in water, but only a temporary usufruct; like fire, air and light, it cannot be reclaimed, after it has once gone out of possession ; but in land there may be an absolute ownership. 2 *Bla. Comm.* 18. 395. Thirdly, water cannot, *eo nomine,* be the subject of a suit; land may be. Fourthly, water is fugitive and evanescent ; when out of possession, it retains no mark of identity; but of land the converse of this is true. 2 *Bla. Comm.* 18. 395. *Brown* v. *Best,* 1 *Wils.* 174. *Sury* v. *Pig t* & al. *Pop.* 172. *Robins* v. *Ba nes, Hob.* 131. Fifthly, if a man grant *aquam suam,* the soil does not

pass; but a grant of the land will pass the water.   *Co. Litt.* 4. *b.*   Sixthly, for an entry on land and diverting a water-course, or corrupting it, trespass *quare clausum fregit* does not lie; the only remedy being *case;* but for the same entry and cutting trees, trespass lies.   The reason is, trees are a part of the realty; and the injury is immediate to the absolute owner; whereas an injury to water is consequential only, by impairing the qualified property.   3 *Bla. Comm.* 217.   2 *Bla. Comm.* 395.   1 *Wils.* 174.   *Luttrel's* case, 4 *Co. Rep.* 86.   *Challenor* v. *Thomas, Yelv.* 143.   The same remarks are applicable to air and light; and it is just as proper to say that they are real estate, as to say that water is.

Water is not a *tenement.*   First, it is not permanent; it is a moveable, wandering thing; and must, of necessity, by the law of nature, continue common; (2 *Bla. Comm.* 18.) but it is an essential characteristic of a tenement, that it is permanent. Secondly, a right to use water or divert it, cannot be a tenement, if that to which the right is annexed, is not permanent— or susceptible of a permanent property; all the incorporeal rights, which are recognized as tenements, being those which relate to a permanent subject of indeterminate duration.   They all arise from, or are annexed to, a corporeal substance—*e. g.* advowsons, tithes, common, rent; they relate to land or real estate, and if of freehold, the estate is capable of supporting the covenant of warranty.   3 *Cruise's Dig.* 2.   *Shep. Touch.* 185. *Co. Litt.* 388. 389.

2. That if this covenant extends to water, there has been no *breach* of it; whether it is considered as a covenant of warranty, properly so called, or a covenant for quiet enjoyment.

To constitute a breach of either covenant, there must be an *eviction,* or what is *equivalent* to it.   *Co. Litt.* 365. *a.*   2 *Wms. Saund.* 178. n. 8.  181. *a.* n. 10.   3 *Cruise's Dig.* 49.   *Com. Dig. tit.* Garranty. A.   *Holder* v. *Taylor, Hob.* 12. 3 *Term Rep.* 587.   *Shep. Touch.* 165.   1 *Wms. Saund.* 322. *a.* n. 2.   *Booth* v. *Starr* & al. 1 *Conn. Rep.* 248.   *Greenby* & al. v. *Wilcocks,* 2 *Johns. Rep.* 1. 4.   *Pitcher* v. *Livingston,* 4 *Johns. Rep.* 8.  14. 7 *Johns. Rep.* 259.   *Sedgwick* v. *Hollenback,* 7 *Johns. Rep.* 380. *Van Slyck* v. *Kimball,* 8 *Johns. Rep.* 168.   *Vanderkarr* v. *Vanderkarr,* 11 *Johns. Rep.* 122.   *Hall* v. *Dean,* 13 *Johns. Rep.* 105.   *Kerr* v. *Shaw* & al. 13 *Johns. Rep.* 236.   *Kane* v. *Sanger,* 14 *Johns. Rep.* 89.   *Abbott* v. *Allen,* 14 *Johns. Rep.* 253. *Shepard* v. *Ryers,* 15 *Johns. Rep.* 497.   *Emerson* v. *Proprietors of land in Minot,* 1 *Mass. Rep.* 464.   *Marston* v. *Hobbs,* 2 *Mass.*

*Rep.* 433. 438. 440. *Gore* v. *Brazier,* 3 *Mass. Rep.* 523. 543. 545. 546. *Hamilton* v. *Cutts* & al. 4 *Mass. Rep.* 349. *Bearce* v. *Jackson,* 4 *Mass. Rep.* 408. *Twambly* v. *Henley,* 4 *Mass. Rep.* 441. *Prescott* v. *Trueman,* 4 *Mass. Rep.* 627. 631. recognized in *Barrett* v. *Porter,* 14 *Mass. Rep.* 143. *Duvall* v. *Craig* & al. 2 *Wheat.* 45. 62. n. *Chappel* v. *Bull,* 17 *Mass. Rep.* 213. The term *eviction,* in its popular, universal sense, means *dispossession.* It is equivalent to ouster or expulsion, which always denote an amotion from the possession, or what is equivalent to it. *Cowp.* 218. *Co. Litt.* 277. 3 *Bla. Comm.* 169. Why should not this term be used in its popular sense ? But if it has a definite *technical* meaning, can the court say, when it is used with reference to the covenant of warranty or quiet enjoyment, it means something else ? Further, if it does not mean a dispossession, it means only a trespass ; for if the possession or seisin continues in the owner, the unlawful entry can be only a trespass ; but it is clear, that eviction and trespass are not synonymous terms. *Prentis* v. *Smith,* 9 *Johns. Rep.* 180. *Co. Litt.* 4. *b.* A mere *disturbance,* not amounting to an actual dispossession, has never been held to be a breach of either of the covenants in question.

The only remaining enquiry, then, is, whether the right of *Roswell Warner* to the use of this water, for the purpose specified, with an actual entry to exercise it, is such a dispossession ? Now, it is admitted, that the freehold of the *soil* covered by the water, is well vested in the plaintiff. The right of *Roswell Warner* is an incorporeal hereditament,—an easement,—presupposing the right of soil in another. A right of way, also, is an easement ; but it has been decided, that the exercise of this right is no breach of the covenant of quiet enjoyment. *Whitbeck* v. *Cook* & ux. 15 *Johns. Rep.* 483. 491. *Jackson* d. *Yates* & al. v. *Hathaway,* 15 *Johns. Rep.* 447. There may be a disturbance in a right of turbary ; of piscary ; of estovers ; to water cattle ; to conduct water over the land from a tannery, distillery or ore-bed ; to wash in a spring ; to draw seines ; to dry nets ; to lay pipes in the land ; to carry water to a cistern ; but no eviction of the soil or land ; and no breach of the covenant of warranty or quiet enjoyment, in consequence of the exercise of any such right. The owner's seisin,—*i. e.* exclusive paramount possession of the land,—remains ; and therefore Ch. J. *Parsons* says, an easement is an *incumbrance,* and within the covenant against incumbrances. *Prescott* v. *Trueman,* 4 *Mass. Rep.* 630. But was it ever held, that this covenant was sy-

Mitchell
*a*
Warner.

nonymous with the covenant of warranty and of quiet enjoyment?
[The counsel then proceeded to answer objections.]

HOSMER, Ch. J. The plaintiff brought his action upon a covenant of general warranty, couched in the accustomed expression. To shew, that the covenant had not been kept and performed, he averred, that before the execution of the defendant's deed to *Welton*, one *Roswell Warner* was well seised and possessed " of the right and privilege of turning the water of *Jack's* brook, which ran through and upon" the land conveyed, and that it was of great use in carrying a carding-machine and other water-works, which the plaintiff had erected since the covenant of warranty was made; and likewise, of the right and privilege of taking it from a certain dam erected across the said brook, upon the land granted, to water his meadow below the dam. The declaration then alleges, that *Roswell Warner*, in virtue of his right and privilege, *entered on the land conveyed, and took the water therefrom, and turned it on to his meadow, to water the same; by reason of which, the plaintiff has lost the benefit of said stream of water, and the use of the carding-machine, clothier's shop, and other water-works there erected.* Here the allegations of fact stop, and the plaintiff concludes with the following inference : "and so, the said *Roswell* hath disseised and dispossessed *the plaintiff of said water-works,* and the benefit of said stream." The jury found a verdict for the plaintiff; and judgment was arrested for the insufficiency of the declaration. To revise this determination is the object of the present writ of error.

Two general questions arise for the decision of the court. The first is, whether the covenant of general warranty embraces the stream of water before-mentioned ? And the second, whether the covenant has been broken ?

1. When considering the first enquiry proposed, it obviously is unnecessary that any regard should be paid to the covenant for quiet enjoyment. The covenants for general warranty, and for quiet enjoyment, are different in their language and in their object; (*Whitbeck* v. *Cook* & ux. 15 *Johns. Rep.* 483. 490. *K rtz* v. *Carpenter,* 5 *Johns. Rep.* 120. *Waldron* v. *McCarty,* 3 *Johns. Rep.* 471.) and in the time and reason of their introduction; (2 *Black. Comm.* 303.) insomuch, that in the state of *New-York*, and probably in other places, both these covenants are frequently to be found in the same deed. But as so much stress was laid, in the argument, on the supposition, that here

*Litchfield,*
June,
1825.
Mitchell
*v.*
Warner.

at least, the above-mentioned covenants are precisely of the same import, I shall incidentally consider the covenant for quiet enjoyment; although the principal force of my observations will be placed on the covenant of general warranty, as being alone applicable to this case.

The distinction between a general warranty, the only one in question, and those special warranties, which every man may assume at pleasure, was not, in the plaintiff's argument, sufficiently regarded. My remarks will be principally confined, as they ought to be, to the covenant of *general* warrranty, to be found in the ancient deed of feoffment, and in most of the conveyances of land in this state.

A general warranty, *in its nature*, is a covenant real, which runs with the land conveyed, descends to heirs, and vests in assignees. *Co. Litt.* 365. *a. Com. Dig. tit.* Garranty. 3 *Cruise's Dig. p.* 49. *s.* 1. It differs, among other things, from a personal covenant, in its assignable quality; the latter being a *chose in action*, incapable of transfer by the act of the party.

The same observations are equally true, in respect of the covenant for quiet enjoyment. 1 *Rolle's Abr.* 521. *Derisley* & al. v. *Custance,* 4 *Term Rep.* 75. 3 *Cruise's Dig. tit.* Deed *p.* 80. *s.* 44.

A general warranty is "a covenant real *annexed* to *lands or tenements,* whereby a man and his heirs are bound to warrant the same." 1 *Inst.* 365. *a.* Its subject matter is *lands and tenements,* and not *hereditaments,* unless this word is used as inclusive of the former, and extends to *freehold* estate, but not to that of any other description. 1 *Inst.* 389. *a. Shep. Touch.* 181. The same doctrine is equally true of the covenant for quiet enjoyment; the material difference between the two covenants, originally consisting in the different remedies for their infraction. This diversity has long ceased to exist; and now a personal action of covenant broken is maintainable on a real covenant of general warranty, for the recovery of damages, as it always was on the covenant for quiet enjoyment. *Walter* v. *Dean and Chapter of Norwich, Brownl.* 21. *Walter* v. *Dean and Chapter of Norwich,* 2 *Brownl.* 164, 165. *Pincombe* v. *Rudge, Yelv.* 139. *Gore* v. *Brazier,* 3 *Mass. Rep.* 545.

As the covenants before mentioned, are annexed exclusively to *lands and tenements,* it becomes necessary to ascertain, with precise accuracy, what is *land,* and what a *tenement.*

*Land,* in its legal signification, comprehends any grounds, soil, or earth whatever. 1 *Inst.* 4. *a.*

*Tenement* signifies any thing that may be holden, *provided it be of a permanent nature*, whether it be of a substantial and sensible, or of an unsubstantial, ideal kind. 2 *Black. Comm.* 16, 17. 1 *Inst.* 6. 19. 20.

A *hereditam nt* includes whatever may be inherited, and extends to a *moveable*, such as an heir-loom, and even to the condition of a bond, which may descend to a man from his ancestor.

Hence it results, that frank-tenement or freehold is applicable not only to lands, but to offices, *rents*, commons and the like ; which, although not visible or tangible, are of a permanent nature. 2 *Black. Comm.* 17. Of *rent* there may be a seisin ; (1 *Inst.* 153. *a.* 159. *a.*) and of consequence, a disseisin ; and the same may be affirmed of tithes, offices, and indeed of tenements generally. For land, rent, and all other things, whereof a *precipe quod reddat* lay at common law, an *assise de libero tenemento* might be brought ; but of profits *apprendre in certo loco*, that action was not sustainable, until the *Stat.* of *West.* 2. *c.* 25. gave an *assise of novel disseisin*, in lieu of a *quod permittat*, which was the common law remedy. *John Webb's* case, 8 *Co.* 90.

A disseisin is a wrongful putting out of him that is *seised* of the *reehold ;* (1 *Inst.* 277.) and at common law, as rent is sometimes a tenement, there may be a disseisin of rent. A general warranty, and a covenant for quiet enjoyment, are annexable to estates of inheritance and freehold ; and that they may be annexed to rents, commons, &c. issuing out of lands and tenements there exists no question. 1 *Inst.* 366. 389. *Shep. Touch.* 181. *Welles* v. *Cowles*, 2 *Conn. Rep.* 575.

The plaintiff having contended, that the covenant of general warranty was annexed to the water of *Jack's* brook, for the privation of which, by paramount title, his suit is instituted, it raises for consideration the question, *whether water is land or tenement ?* If it is neither, no person can be seised of it ; and of consequence, the defendant having granted an estate in lands and tenements, his covenant of general warranty was not annexed to, and did not embrace, the waters of *Jack's* brook.

It is too late to enter into the legal character and quality of water ; the law having been settled, time out of mind, on this subject, and remained uniform and unquestioned.

*Water* is neither land nor tenement, nor susceptible of absolute ownership. It is a moveable, wandering thing ; and must, of necessity, continue common by the law of nature. It admits only of a transient, usufructuary property ; and if it escape for

a moment, the right to it is gone forever ; the qualified owner having no legal power of reclamation. Consistently with the preceding remarks, it is not capable of being sued for, by the name of water, or by a calculation of its cubical or superficial measure ; but the suit must be brought for the land that lies at the bottom, covered with water. 2 *Bla. Comm.* 17. 395. *Brown* v. *Best*, 1 *Wils.* 174. 1 *Inst.* 46. *Sury* v. *Pigot, Pop.* 166. Hence, as it is said in the authorities just cited, water is a distinct thing from land. The truth of this observation will be recognized, by every person, who understands the natural properties of each. No action of trespass is sustainable for poisoning the water on a person's land. 3 *Bla. Comm.* 217. *Luttrel's* case, 4 *Co.* 84. But trespass on the case may be maintained, for the injury done to the usufructuary right. The same observation is equally applicable to *air* and *light* ; and on account of its fugitive nature, water is classed, by all jurists, with these elements. Hence, the air which hovers over one's land, and the light which shines upon it, are as much land, and embraced by a covenant of general warranty, as water is.

As water is not land, neither is it a tenement ; because it is not of a *permanent nature*, nor the subject of absolute property. Real covenants relate, exclusively, to real estate ; and the estate to which such covenants are annexed, must be *of freehold*, or it is not embraced by them. 3 *Cruise's Dig. p.* 50. *tit.* Deed. *s.* 4. A covenant relating to an easement may be good, as a contract between the parties ; but is no real covenant, nor runs with the hereditament, out of which it is reserved. *Dean of Windsor* v. *Glover*, 2 *Saund.* 302.

It is said, both by Lord *Coke*, and by *Sheppard* in his *Touchstone*, that a warranty doth extend *to all things issuing out of the land.* *Co. Litt.* 388, 389. *Shep. Touch.* 197. But this observation, cited and relied upon by the plaintiff, was both misunderstood, and misapplied. Water is no more an issue of land, than is air, or fire ; nor has it ever, by any jurist, been so considered. A title to the land may, and often does, give a right to water, exuding through its surface, or passing over it ; and the same title, formerly imparted a right to a *villein regardant*, and now does to the air and light over it ; but it is no legal consequence, that these are issues of the land. The passage referred to in *Co. Litt.* this : " If he that hath a *rent, common,* or any profit out of the land in tail, disseise the tenant of the land, and maketh a feoffment of the land, and warrant the land to the feoffee and his heirs, regularly, the warranty doth ex-

*Litchfield,*
June,
1825.

Mitchell
*v.*
Warner.

*Litchfield,*
*June,*
*1825.*

*Mitchell*
*v.*
*Warner.*

tend *to all things* issuing out of the land." The "*all things*" here alluded to, were *rents, commons,* &c.; that is, they were *tenements.* This entirely corresponds with the doctrine in *Sheppard's Touchstone,* 184., where he cites the first of *Coke's Institutes* before referred to, and says, that " *a warranty in deed may be annexed to estates of inheritance or freehold* ; and that not only of corporeal things, which pass by livery, as houses, lands, and the like ; but, also, of incorporeal things, which lie in grant, as advowsons, rents, commons, estovers, and the like ; which issue out of lands and tenements," &c. Now, the doctrine affirms, that warranty is annexable to freehold estates ; and is illustrated, by the enumeration of *tenements,* and *the like* of them ; which necessarily are *tenements.*

A number of authorities have been cited to establish the principle, that if one conveys lands with warranty, he stipulates against all lawful entries *to enforce incorpo eal rights.* 1 *Inst.* 366. *b.* 393. *a.* 388. *b.* 2 *Co.* 46. 48. *Coe* v. *Talcott,* 5 *Day,* 88, 92. 10 *Co.* 97. So far as the citations bear on the present case, which is true in part only, the incorporeal rights alluded to, are rents, commons, &c. which are *tenements* ; but no hereditament that is not of this description, is mentioned or contemplated.

It was said in the argument, that a common recovery may be had of incorporeal rights ; but the same error has occurred here as in the preceding observation, and for the same reason. The subject of a common recovery should have been specified, and not embraced in a general expression not literally correct, nor authorized by any established law. It is certain, that a common recovery cannot be suffered of any estate *that is not of freehold* ; and hence, things personal may not be entailed ; as it would tend to a perpetuity, because the grantee has no method of barring the entail. 2 *Bla. Comm.* 398. In short, a common recovery is a judgment obtained in *a real action,* by a writ of *precipe quod reddat,* or writ of entry *sur disseisin in the post,* and is only applicable to a freehold estate.

Having replied, very briefly, to some objections, which were misconceived, or without bearing on the matter of controversy, I conclude, that water is neither land nor tenement, and in no possible sense, real estate ; and therefore, not embraced by the covenant of warranty. The above re●●ks and conclusion are equally just, in respect of the covenant for quiet enjoyment.— Take away the whole of the brook or pond of water, and you do not impair the seisin in the land conveyed. The covenant

*Litchfield,*
June,
1825.

Mitchell
*v.*
Warner.

that the grantor was well *seised* of the premises conveyed, is literally true, if there was a paramount title to the water in another person. The *freehold* is the only correlative of the term *seised.* There may be many easements granted while the freehold remains ; and the covenant against incumbrances is adapted to such weights upon the thing granted, but not the covenant of warranty.

2. If the covenant of warranty extended to the water in question, it would not vary my opinion in the case ; for such covenant, upon the facts averred by the plaintiff, would not be broken ; neither would it be violated, if it were a covenant for quiet enjoyment.

" A warranty," says Sir *Edward Coke,* (1 *Inst.* 365. *a.*) " is a covenant real, annexed to lands or tenements, whereby a man and his heirs are bound to warrant the same ; and to yield other lands and tenements to the value of those that shall be evicted by a former title." Hence, *eviction* is the precise event, on which the breach of the covenant is suspended. The established meaning of the term eviction, is *ouster* or *dispossession.* The covenant of warranty is never broken, unless by eviction, literally, or substantially. A turning out by the shoulders, said Lord *Mansfield,* in *Fisher* v. *Prosser, Cowp.* 218. is not necessary to constitute an ouster. It is sufficient that an act has the same effect, and falls within the same reason. Thus, if it be made to appear, that a person holds land adversely, denies the title of his co-tenants, claims the whole possession for himself, denies the possession to others, or takes the whole profits of an estate, and refuses to account ; these acts, respectively, are not an ouster, strictly speaking, but they are *evidence* of ouster, and may, in essence, amount to it. *Fisher* v. *Prosser, Cowp.* 217. *Doe* d. *Hellings* & ux. v. *Bird,* 11 *East,* 49. The secluding a man from the seisin, in whatever manner it may be effected, is a disseisin or ouster, and if by paramount title, it is a breach of the covenant of warranty. Thus, the levy of an execution on land, with *seisin* and *possession* delivered ; (*Gore* v. *Brazier,* 3 *Mass. Rep.* 523.) the yielding up of the possession to a person claiming it, whose title was undoubted, and, therefore, irresistible ; (*Hamilton* v. *Cutts* & al. 4 *Mass. Rep.* 349.) the refusal of possession by a person occupying under elder title ; (*Duvall* v. *Craig,* 2 *Wheat.* 61.) these, and an infinite variety of other facts of the same amount, although not actual eviction in the letter, are really such in their spirit and effect. The meaning of the term eviction, and the necessity of it to constitute a

breach of the covenant of warranty, are now, most unexpectedly, brought into controversy, after they have been so long and uniformly established, as to be perfectly unquestionable. *Booth* v. *Starr & al.* 5 *Day,* 275. *Booth* v. *Starr* & al. 1 *Conn. Rep.* 244. *Greenby* and *Kellogg* v. *Wilcocks,* 2 *Johns. Rep.* 1. *Sedgwick* v. *Hollenback,* 7 *Johns. Rep.* 376. *Vanderkarr* v. *Vanderkarr,* 11 *Johns. Rep.* 122. *Abbott* v. *Allen* & al 14 *Johns. Rep.* 248. 253. *Emerson* v. *Minot Proprietors,* 1 *Mass. Rep.* 464. *Marston* v. *Hobbs,* 2 *Mass. Rep.* 433. *Gore* v. *Brazier,* 3 *Mass. Rep.* 523. *Hamilton* v. *Cutts & al.* 4 *Mass. Rep.* 349. *Bearce* v. *Jackson,* admr. 4 *Mass. Rep.* 408. *Twambley* v. *Henley,* 4 *Mass. Rep.* 441. *Prescott* v. *Trueman,* 4 *Mass. Rep.* 627. *Duvall* v. *Craig,* 2 *Wheat. Rep.* 45. 61. To cite all the decisions on this subject, would be both laborious and unprofitable.

The covenant for quiet enjoyment is violated only by the same actual eviction, as is required in the case of a warranty. The expressions of this covenant are so comprehensive, that a different construction might have been adopted ; but a regard to the object of it, which was to substitute damages for land, and to bind personal representatives, has induced the courts to vary no further from the covenant of warranty, than the affectuating of this purpose necessarily demanded. In this state, the covenant for quiet enjoyment is practically unknown ; and in the neighbouring commonwealth of *Massachusetts,* there has been no determination precisely ascertaining the constituents of a breach of it ; although some general remarks were made, in their supreme court, on this subject, without the precision requisite for the formation of a rule. But in the state of *New-York,* before the supreme court, the necessity of an actual eviction, or one that is *virtually* such, to constitute a breach of the covenant for quiet enjoyment, has often been adjudged. *Waldon* v. *McCarty,* 3 *Johns. Rep.* 471. *Kortz* v. *Carpenter,* 5 *Johns. Rep.* 120. *Van Slyck* v. *Kimball,* 8 *Johns. Rep.* 198. *Hall* v. *Dean,* 13 *Johns. Rep.* 105. *Whitbeck* v. *Cook* & ux. 15 *Johns. Rep.* 483. *Shepard* v. *Ryers,* 15 *Johns. Rep.* 497. It has been strenuously contended for the plaintiff, upon the expression of the court, in *Kortz* v. *Carpenter,* 5 *Johns. Rep.* 120. "that nothing amounts to a breach of the covenant for quiet enjoyment, but an *actual eviction, or disturbance of the possession of the covenantee ;*" that *every disturbance,* in the most comprehensive sense of the term, is a breach of the covenant.— Little stress was laid, by the plaintiff, on the numerous decisions of the supreme court of *New-York,* requiring actual evic-

tion ; or on the case of *Whitbeck* v. *Cook,* 15 *Johns. Rep.* 483., in which it was determined, that a public highway, attended, necessarily, by daily and hourly disturbances of the possession, was no breach of the covenant before mentioned ; or on the opinion in a recent determination expressed by the late Chief Justice *Thompson. Shepard* v. *Ryers,* 15 *Johns. Rep.* 497. In this case, founded on the covenant of warranty, and for quiet enjoyment, are given both the principle and its application. " But," said the judge, " these grantees have not been *disturbed* in their possession, nor has *Shepard,* in any manner, been made liable for any damages on his covenants." Now, what was intended by the word *disturbed,* as applied to the preceding covenants ? The answer is given in the sentence immediately succeeding : " Indeed, it does not appear, that his covenants have been broken, as no eviction of his grantees has been shewn." As a person may, in a comprehensive sense of the expression, experience a disturbance, by any interference with his possession ; so, in another sense, more circumscribed, he alone is disturbed in his possession, who is evicted or amoved from it ; and this is the legal intendment of the expression, when referred to the breach of the covenants before-mentioned. The case of *Kortz* v. *Carpenter,* which has given occasion for these criticisms, contains, on this subject, within itself, by reference to certain determinations, the most precise certainty. The first of them was *Fraunces's* case, 8 *Co.* 89. *b.* [130.] That contained a covenant for quiet enjoyment, in which it was decided, that a mere demand to enter into a house, which was denied, was not a breach of the condition ; " but that there ought to be some act done ; as after request made by the executor, *to shut the door against them, or to lay his hands upon them, and to have resisted them, or such like acts.*" The only other case cited is anonymous, in the reports of Chief Baron *Comyns,* 228. It was an action on bond, by which the defendant covenanted with the obligee, that he should have and enjoy a moiety of the profits of a certain tenement, owned by the defendant ; and, by way of breach, it was alleged, that the defendant had received the whole rent, or profits to himself. This was adjudged to be a breach of the condition of the bond. Here was no disturbance of the possession, but a conversion of the subject of the contract. This case, however, has no application to the enquiry concerning the breach of a covenant for quiet enjoyment ; but the former case shews, incontrovertibly, that by disturbance of possession, in reference to that covenant, was intended amotion from the possession, or expulsion, if

not in form. yet in effect. I am fully aware, that the above discussion, concerning the breach of a covenant for quiet enjoyment, was not necessary ; but deference for the learned counsel, who placed much reliance on this subject, and an unwillingness that the argument on this point should be reported, without any reply, on the part of the Court, are my apologies.

What, then, is the actual eviction, of which the plaintiff complains, as having constituted a breach of the covenant of warranty ? He avers, that *Roswell Warner*, in virtue of his right and privileges, entered on the land conveyed, and took the water therefrom, turned it on to his meadow, and thus, destroyed the use of the clothier's shop, carding-machine and other water-works, which the plaintiff had erected.

In the first place, an entry on the land conveyed, to take the water, and the actual taking of it, constituted no eviction or disseisin. Some entries on land unwarrantably, are trespasses only, while others are ousters, amoving the tenant from the possession. It is said, by Sir *Edward Coke,* 1 *Inst.* 181. *a.* " that every entry is no disseisin, unless there be *an ouster of the freehold ;* and therefore, *Littleton* doth not set down one entry only, but an ouster also." The character of the entry depends on the intent and purpose for which it was made. If the entry was under claim or colour of title to the land ; (*Smith* v. *Burtiss,* 6 *Johns. Rep* 197.,) the object was to dispossess the tenant, and undoubtedly constituted an eviction. But if it were to take some of the produce of the land, or to use it, in any manner without claim of title or right to possess, otherwise than in passing over it, it may be a trespass, but it is no ouster. *Whitbeck* v. *Cook,* 15 *Johns. Rep.* 483. An entry to dig turf, is no eviction. 1 *Inst.* 4. *b.* The same may be said of an entry to take fish ; to water cattle ; to wash in a spring ; to dry nets ; to draw a seine, or to cut wood. None of these destroy the owner's *seisin ;* because this consists in an exclusive, permanent possession of the land, which such entries for a partial use, have never been deemed to impair. If lawful, they are easements, comprising no claim to the land itself ; as was justly said, by *Swift,* Ch. J. in *Peck* v. *Smith,* 1 *Conn. Rep* 135. " It supposes," said he, " that different rights in the use of the same thing may co-exist in different persons ; and nothing is more common than for one to have an easement in the land of another, who has an estate in fee, and is in actual possession. Suppose a grant to one to draw water at the well of another : *Here, the grantee may pass a thousand times a day to the well, but he*

*does not dispossess the grantor.* The rights of each are perfectly compatible." On so trite a subject I should never have entered, unless it were rendered necessary, by the argument of the plaintiff.

It has been contended, that an entry not under a claim of title to possess, but merely to take the benefit of an incorporeal right, that is, to turn the water so often mentioned, amounted to an eviction. To sustain this position an authority has been cited, which I shall now consider.

The proposition advanced is, that an entry under elder title to take, and the taking of the benefit of an *incorporeal right*, is a breach of the covenant for quiet enjoyment. If by incorporeal right, were here intended a *tenement* annexed to the granted estate, I should not deny the proposition; but the meaning, undoubtedly, is, (for otherwise it would be inapplicable,) that an entry to take, and the actually taking of the benefit of an easement, which is no tenement, infracts the before mentioned covenant. To sustain this assertion, the plaintiff has adduced the case of *Lloyd* v. *Tomkies,* 1 *Term Rep.* 671. The declaration of the plaintiff was on covenant for quiet enjoyment of two pews in the parish church of *Oswestry.* By way of breach, it was averred, that the defendant disturbed and hindered the plaintiff in the enjoyment of the pews; and here the plaintiff in error would seem, having found the word *disturbed,* to close his examination of the pleadings. But the declaration proceeds thus: " that is to say, the defendant, at some of the times, sat in the said pews, and at other of those times, put and caused to be put into the same, divers other persons, to sit in the said pews, without the leave, and against the will of the plaintiff; and at other of those times, locked up the said pews, and kept the same locked up," &c. To this declaration there was a general demurrer; and judgment was for the plaintiff. It was objected, that the defendant's proceeding was a trespass only; but by the court, it was said: "Here the act itself asserts a title; for the defendant locked up the pew, which is as strong an assertion of right as can well be imagined." The case was determined on the ground of an actual eviction.

It has been urged by the plaintiff, that an entry to levy, and the levying of an execution on land, is a breach of the covenant for the quiet enjoyment of it. In this state, it would not have this effect; as the levy on land is no eviction of the possession, and merely confers title; but in the neighbouring state of *Massachusetts,* the above covenant would be broken by this act; as

*Litchfield,*
June,
1825.

Mitchell
*v.*
Warner.

the levy is by law accompanied with a delivery of the premises set off to the creditor, and constitutes an ouster. *Gore* v. *Brazier, 3 Mass. Rep.* 523. The extent of a recognizance on land, in *England,* was considered to be an actual eviction, in a case cited 6 *Vin. Abr. tit.* Covenant L. 7. *pl.* 1. ; and undoubtedly, it would be a breach of the covenant before mentioned. But these determinations have no applicability to the case before us. The case of *Pincombe* v. *Rudge, Yelv.* 139. was cited, but I do not know for what purpose. The point decided was merely this ; that a *warrantia chartæ* is no bar to an action on the covenant for an expulsion ; the remedy for one, being land, and for the other, damages.

The plaintiff has insisted, that the water-works having been *rendered useless,* by carrying away the water, this, by consequence, is a disseisin of the water-works. If it were, it would be of no avail. The covenant, by taking away the water, would be broken, if it was embraced within it ; but as it is not, it neither directly, nor consequentially, is of this character. But the principle contended for, is not tenable. To tear down a fence surrounding a pasture ; to cut up the floor of a house ; to destroy the windows, and various other acts easily imagined, may render a thing useless ; but they do not amount to an eviction or ouster. The obstructing of the passage of a person to a chamber, by shutting it up, is, virtually, an expulsion from it ; but this is widely different from merely rendering a thing useless. It may thus exist without use, in the possession of the owner, who, though he cannot complain of an eviction, may demand damages for a trespass. It is said, by Lord *Coke,* 1 *Inst.* 161. *a.* that "the turning of the whole stream of water that runs to a mill, is a disseisin of the mill itself ;" and this is cited, as if an actual eviction were intended. But this is in opposition to fact, the most obvious and demonstrable. The covenants of warranty, and for quiet enjoyment, are broken only by an ouster in fact, or that which is precisely tantamount. Now, the disseisin, of which Sir *Edward Coke* speaks, is *by election, and not actual.* It is disseisin of rent, which never, from the nature of the subject, it being incorporeal, and incapable of dispossession, can be actual, but is of choice merely, for the sake of the remedy. 3 *Bla. Comm.* 70. "The more we read, unless we are very careful to distinguish," said Lord *Mansfield,* in *Taylor* v. *Horde,* 1 *Burr.* 60., "the more we shall be confounded : For after the assize of *novel disseisin* was introduced, the legislature, by many acts of Parliament, and the courts

Litchfield,
June,
1825.

Mitchell
v.
Warner.

of law, by liberal constructions in furtherance of justice, extended this remedy, for the sake of the owner, to *every trespass or injury to his real property*; *if, by bringing his assize*, he thought fit to *admit* himself disseised." Disseisin and eviction are not commensurate terms; and eviction by election, is a phrase unknown to the law. In *Hunt* v. *Cope, Cowp.* 242. it was adjudged, that " in replevin upon distress for rent, a plea in bar that the defendant pulled down a summer-house, *whereby the plaintiff was deprived of the use thereof*, without saying that he was expelled, or put out of the same, is insufficient, *being a mere trespass, but no eviction.*" The taking away a pent house, in *Roper* v. *Lloyd*, Sir *T. Jones*, 148. was held to be a trespass only. This decision was doubted in *Cherbourn* v. *Rye, Cro. Eliz.* 341. but no determination was had; and, by reason of a divided court, the case was adjourned.

It was likewise contended for the plaintiff, that *Roswell Warner*, by using a part of the land as a water-course, thereby damaged the grass; and that this was an eviction. I ask, an eviction of what? Certainly of nothing. It was an injury of the same species as a way, which is no ouster of the *freehold. Whitbeck* v. *Cook*, 15 *Johns. Rep.* 483.

I come, then, to this conclusion, that the water of *Jack's* brook was not embraced by the covenant of the defendant; and that the covenant has not been broken.

Had the plaintiff title, and assigned a legal breach to the defendant's covenant against incumbrances, I presume the preceding questions would never have arisen. The right of *Roswell Warner* to the water of *Jack's* brook, was an easement only; and, as was said by *Parsons*, Ch. J. in *Prescott* v. *Trueman*, 4 *Mass. Rep.* 630. a right to an easement of any kind, is an incumbrance; it is a weight on the land, which must lessen the value of it. Every right to, or interest in the land granted, to the diminution of the value of the land, but consistent with the passing of the fee, must be deemed, in law, an incumbrance. 1 *Inst.* 4. *b.*

I am clearly of opinion, that there is no error in the judgment complained of.

PETERS, CHAPMAN and BRAINARD, Js. were of the same opinion.

BRISTOL, J. dissented.

Judgment affirmed.