JOHN CARTER v. THE EXECUTORS OF MATTHIAS DENMAN, DECEASED.

1. The ordinary covenants for title are personal covenants, binding on the personal representatives of the covenantor.

2. Three of them, *viz:* 1, that the grantor is lawfully seized; 2, that he has good right to convey; and 3, that the land is free from encumbrances, do not run with the land nor pass to the assignee.

3. The covenants of warranty and for quiet enjoyment run with the land. They descend to heirs and vest in assignees.

4. To sustain an action on the covenant of warranty, or for quiet enjoyment, there must be either an actual eviction, or a disturbance of title, or possession by paramount title, tantamount to an eviction.

5. An ouster or eviction from a part of the premises is enough to maintain the action.

6. Covenants running with the land pass with the title, whether it be transferred by assignment from the grantor or by act of law.

7. An inchoate right of dower is an encumbrance, and its existence is a breach of the covenant against encumbrances.

8. A covenant, that the grantor "will warrant and for ever defend the

premises against ·all lawful claims, freed and discharged of all encumbrances," operates as a covenant against encumbrances, and also as a general warranty.

9. In an action on a covenant running with the land, the declaration must designate the land conveyed with convenient certainty.

10. When the action is by an assignee of the covenant, it is not necessary that he should be described as "assignee."

11. When the covenant is to do or forbear a particular act, it is sufficient to assign the breach in the words of the covenant. But on a covenant of warranty the declaration must go farther, and show an eviction by title paramount.

This was an action upon a covenant, contained in a deed of bargain and sale of certain real estate in the county of Essex. The action was brought, by a subsequent purchaser of the land, against the executors of the covenantor.

The declaration was as follows:

New Jersey Supreme Court, of the term of January, in the year 1850.

Essex county, *ss.*—Rodney Wilber and Aaron Denman, executors, &c., of Matthias Denman, deceased, the defendants in this suit, were summoned to answer unto John Carter, the plaintiff therein, of a plea of breach of covenant; and thereupon the plaintiff, by A. C. M. P., his attorney, complains, for that whereas heretofore, in the lifetime of the said M. D., to wit, on the 16th day of January, in the year 1833, at Newark, in the said county, by a certain indenture, commonly called a deed of conveyance, made by and between the said M. D., of the first part, and Samuel Miller, of the second part, sealed with the seal of the said M. D., the date whereof is the day and year aforesaid, it was witnessed, that for the consideration of the sum of two thousand and five hundred dollars, paid by the said S. M. to the said M. D., he, the said M. D., did grant, bargain, sell, and convey, to the said S. M. and his heirs and assigns, a certain lot, tract, or parcel of land and premises, with the appurtenances thereunto belonging, situate, lying, and being in the township of Springfield, in the county aforesaid, and in the said indenture particularly mentioned and described, to have and to hold the same unto and to the use of the said S. M. his heirs and assigns for ever: and the said M. D. did, in and by the said indenture, for himself, his heirs,

executors, and administrators, (amongst other things) covenant and grant, to and with the said S. M. and his heirs and assigns, that he, the said M. D., would warrant, secure, and for ever defend the said land and premises unto the said S. M. and his heirs and assigns for ever against the lawful claims and demands of all and every person and persons, freely and clearly freed and discharged of and from all manner of encumbrances whatsoever, as · by the said indenture, or the record thereof, (reference being thereto had) will (amongst other things) more fully and at large appear. And· afterwards, to wit, on the 4th day of September, in the year aforesaid, at Newark aforesaid, by a certain other indenture, commonly called a deed of mortgage, made by and between him the said S. M. and Harriet his wife, of the first part, and Nicholas Arrowsmith and Eleanor Wilson, surviving executors of the last will and testament of James Wilson, deceased, of the second part, sealed with the seals of the said S. M. and H. M., the date whereof is the day and year last aforesaid, it was witnessed that for the consideration of the sum of one thousand and five hundred dollars, paid by the said N. A. and E. W., executors as aforesaid, to them, the said S. M. and H. M., did grant, bargain, sell, and convey to the said N. A. and E. W., executors as aforesaid, and their heirs and assigns, the said lot, tract, or parcel of land and premises herein before mentioned, and in the said last mentioned indenture particularly mentioned and described, together with all and singular the profits, privileges, and advantages, with the appurtenances to the same belonging or in any wise appertaining, and also all the estate, right, title, interest, property, claim, and demand whatsoever of the said S. M. and H. M. of, in, and to the same, and of, in, and to every part thereof, to have and to hold the same unto and to the use of the said N. A. and E. W., executors as aforesaid, and their heirs and assigns; provided always, and it was agreed by and between the said S. M. and the said N. A. and E. W., executors as aforesaid, in and by the said last mentioned indenture, that if the said S. M., his heirs, executors, or administrators, did and should well and truly pay, or cause to be paid, to the said N. A. and E. W., executors as aforesaid, or to their cer-

tain attorney or attorneys, heirs, executors, administrators, or assigns, the sum of $1500, on or before the fourth day of September, in the year 1834, with lawful interest half-yearly, according to the condition of a certain bond bearing even date with the said last mentioned indenture, without any deduction or defalcation for taxes, assessments, or any other imposition whatsoever, that then the said last mentioned indenture should cease and be void, as by the said last mentioned indenture (reference being thereto had) will (amongst other things) more fully and at large appear; and afterwards, to wit, on the 3d day of October, in the year 1834, the said N. A. and E. W., executors as aforesaid, filed their bill of complaint in the Court of Chancery of the state of New Jersey, at Trenton, to wit, at Newark aforesaid, in and by which said bill of complaint, they then and there (amongst other things) alleged and charged that default had been made by the said S. M. in the performance of the proviso or condition of the said last mentioned indenture, and hereupon prayed that the equity of redemption of the said S. M. in the said mortgaged premises might be foreclosed, and that the said mortgaged premises might be decreed to be sold to pay off and satisfy the amount due and unpaid upon and secured by the said last mentioned indenture; that thereupon such proceedings were had in the said Court of Chancery, at Trenton, to wit, at Newark aforesaid, that afterwards, to wit, on the twenty-first day of January, in the year 1835, at Trenton, to wit, at Newark, aforesaid, a decree was made in the said Court of Chancery, bearing date the day and year last aforesaid, whereby it was (amongst other things) decreed that the equity of redemption of the said S. M. and H. M. in the said mortgaged premises should be and was foreclosed; that the said mortgaged premises should be sold to pay off and satisfy to the said N. A. and E. W., executors as aforesaid, the amount due and unpaid upon and secured by the said last mentioned indenture and ascertained by the said decree, and that an execution should be issued for that purpose, directed to the sheriff of the said county of Essex, as in and by the record of the said proceedings and decree (reference being thereunto had) will more fully and at large appear; and

thereupon afterwards, to wit, on the 2d day of February, in the year last aforesaid, an execution was issued out of the said Court of Chancery, upon and according to the said decree, and directed and delivered to the sheriff of the said county of Essex, under and by virtue of which said execution, R. O. R., then the sheriff of the said county of Essex, to whom the said execution was so directed and delivered as aforesaid, to wit, on the 11th day of May, in the year last aforesaid, at Newark aforesaid, having previously duly advertised the said mortgaged premises for sale in due course of law, struck off and sold the said mortgaged premises to the said N. A. for the consideration of $1600; and, in pursuance of such sale as aforesaid, afterwards, to wit, on the twenty-third day of June, in the year last aforesaid, at Newark aforesaid, by a certain other indenture, commonly called a deed of conveyance, made by and between the said R. O. R., as such sheriff as aforesaid, of the first part, and the said N. A., of the second part, sealed with the seal of the said R. O. R., as such sheriff as aforesaid, the date whereof is the day and year last aforesaid, he, the said R. O. R., as such sheriff as aforesaid, for the consideration of $1600, paid to him by the said N. A., did bargain, sell, and convey the said mortgaged premises, together with all and singular the privileges and advantages, with the appurtenances to the same belonging or in any wise appertaining, and all the estate, right, title, interest, property, claim, and demand whatsoever of the said S. M. and H. M. of, in, and to the same, and of, in, and to every part and parcel thereof, in as full and ample a manner as he, the said R. O. R., as such sheriff as aforesaid, by virtue of the said execution, might and could, or ought to have conveyed the same to the said N. A. and his heirs and assigns, to have and to hold the same unto and to the use of the said N. A. and his heirs and assigns, as in and by the said last mentioned indenture, or the record thereof, (reference being thereunto had) will more fully and at large appear; and afterwards, to wit, on the 30th day of September, in the year 1835, at Newark, aforesaid, by a certain other indenture, commonly called a deed of conveyance, made by and between the said N. A., of the first part, and the plain-

tiff, of the second part, (which said indenture, sealed with the seal of the said N. A., the plaintiff now brings here into court, the date whereof is the day and year last aforesaid), it was witnessed that, for the consideration of the sum of $2200, paid by the plaintiff to the said N. A., he, the said N. A., did grant, bargain, sell, and convey the said land and premises, together with all and singular the privileges and advantages, with the appurtenances to the same belonging or in any wise appertaining, and all the estate, right, title, interest, property, claim, and demand whatsoever of, in, and to the same, and of, in, and to every part and parcel thereof, to the plaintiff and his heirs and assigns, to have and to hold the same unto and to the use of the plaintiff and his heirs and assigns forever, as in and by the said last mentioned indenture (reference being thereto had) will more fully and at large appear.

And the plaintiff avers, that before and at the time of the sealing and delivery of the said indenture, or deed of conveyance, so made by and between the said M. D., of the first part, and the said S. M., of the second part, as aforesaid, and herein before first mentioned, to wit, on the 16th day of January, in the year 1833, Mary Pierson, then the wife, and since the widow of Robert Pierson, now deceased, became and was entitled to an inchoate right of dower in the said land and premises, by reason of the seizin of the same in fee in the said R. P. before that time and during the coverture of the said M. P. with the said R. P., to wit, at Newark aforesaid; and that after the sealing and delivery of the said indenture, or deed of conveyance, last herein before referred to, and after the sealing and delivery of the said indenture, or deed of conveyance, so made by and between the said N. A., of the first part, and the plaintiff, of the second part, as aforesaid, and herein before mentioned, and since the death of the said M. D., to wit, on the 1st day of February, in the year 1847, the said R. P. departed this life, to wit, at Newark aforesaid, and that thereupon, then and there, the said inchoate right of dower of the said M. P. in the said land and premises, she having then and there survived the said R. P., her said husband, became and was complete and perfect, in such manner

that she might lawfully demand and have a recovery thereof
against the plaintiff, and that the said M. P., being so entitled
as aforesaid; afterwards, to wit, on the 6th day of July, in the
year 1847, commenced in the Supreme Court of Judicature of
this state, at Trenton, against the plaintiff, an action for the
recovery of her said dower in the said land and premises, to
wit, at Newark aforesaid, and that thereupon such proceed-
ings were had in the said Supreme Court at Trenton afore-
said, in the said action, that afterwards, to wit, in the term of
January, in the year 1848, of the said court, at Trenton afore-
said, it was considered and adjudged by the said court, that
the said M. P. recover against the plaintiff her seizin of the
third part of the said lands and premises, with the appurte-
nances, to be held by her in severalty by metes and bounds,
to wit, at Newark aforesaid; and that afterwards, to wit, on
the 4th day of January, in the year last aforesaid, a writ of
seizin and inquiry of damages was issued out of the said court,
at Trenton aforesaid, in the said action, and directed and de-
livered to the sheriff of the said county of Essex, whereby he
was commanded (amongst· other things), without delay, to
give the said M. P. her full seizin of the said third part of the
said lands and premises, with the appurtenances, to be held by
her in severalty by metes and bounds, to wit, at Newark afore-
said; and that thereupon afterwards, to wit, on the 3d day of
April, in the year last aforesaid, the said sheriff of the said
county of Essex, at Springfield aforesaid, caused the said M.
P. to have her full seizin of the said third part of the said
lands and premises, with the appurtenances, to hold to her in
severalty by metes and bounds; and afterwards, to wit, in the
term of April, in the year last aforesaid, of the said court, at
Trenton aforesaid, it was further considered and adjudged by
the said court, that the said M. P. recover against the plain-
tiff, as well the value of the said third part .of the said lands
and premises, with the appurtenances, from the time of the
demand of the said dower by the said M. P. until the time of
the delivery of seizin as aforesaid, which said value amounted
to the sum of twenty-six dollars and sixty-six cents, and the
damages, over and above. the said value, to the amount of

twenty-six dollars and thirty-three cents, found by the said inquisition, and also the sum of fifty-two dollars and seventy-two cents, by the said court adjudged of increase to the said M. P. for her costs and charges by her about her suit in that behalf expended, which said value and damages, including the said costs and charges, amounted to the sum of $105.71, to wit, at Newark aforesaid, as by the record of the said proceedings and judgment, now remaining in our said court (reference being thereto had) will more fully and at large appear.

And the plaintiff avers, that the said M. P. hath, ever since the seizin of the said third part of the said land and premises, with the appurtenances, was caused to be given to her as aforesaid, to hold to her in severalty as aforesaid, hitherto been seized of and held the said third part of the said land and premises, with the appurtenances, in severalty, lawfully against the plaintiff, to wit, at Newark aforesaid, and greatly to his damage; and the plaintiff, by reason of the premises, was not only put to and suffered great trouble and inconvenience, but was forced and obliged to, and did necessarily pay a large sum of money, to wit, the sum of $105.71 on account of the said sum so recovered as aforesaid, and divers other large sums of money, in the whole amounting to a large sum of money, to wit, the sum of $250, in defending the said suit, to wit, at Newark aforesaid, contrary to the covenant so made by the said M. D., for himself, his heirs, executors, and administrators, with the said S. M. and his heirs and assigns, as aforesaid.

And so the plaintiff in fact saith, that the defendants (although after requested so to do) have not kept the said covenant so by the said M. D., for himself, his heirs, executors, and administrators made as aforesaid, but have broken the same, and to keep the same with the plaintiff have hitherto wholly neglected and refused, and still do neglect and refuse, to the damage of the plaintiff of one thousand dollars, and therefore he brings suit, &c.

To this declaration, there was a special demurrer and join-

der. The cause was argued at November term, 1851, before the CHIEF JUSTICE and NEVIUS and OGDEN, Justices.

*Hayes*, for the defendant, relied exclusively on the *special* grounds of demurrer. He insisted—

1. That in an action upon a covenant running with the land, the premises conveyed · should be described with certainty and precision. The declaration, in this respect, is defective.

2. The declaration contains no averment that the plaintiff is assignee of the covenant, nor is the action brought in his name as assignee.

3. There is no sufficient breach. The breach should be assigned in the words of the covenant, negatively or affirmatively. 1 *Chit. Pl.* 328, 368; 5 *John. R.* 168; 7 *John. R.* 380.

*A. C. M. Pennington*, for plaintiff.

1. No specific description of the premises is required; they are designated with sufficient certainty.

2. The declaration contains a statement of facts, which shows, by necessary implication, that plaintiff is the assignee of the covenant. It is not necessary to state, in pleading, a conclusion of law. The only question is, whether, upon the facts stated in the declaration, the plaintiff is the assignee of the covenant declared upon? This question is raised by the general demurrer, and must be passed on by the court.

The covenant passes with the estate, whether it be conveyed by assignment from the covenantor or by act and operation of law. It is also a personal covenant, binding on the personal representatives. The assignee of any part of the land is entitled to the benefit of it. 4 *Kent's Com.* 468; *Burton on Real Pro.* 183; *Gould's Plead.* 123, note; 1 *Esp. N. P.* 150; 1 *Pen.* 406, 409; 4 *Halst.* 139; 12 *Mass.* 303; 5 *Halst.* 20; 7 *Halst.* 261; 2 *Penn. Rep.* 507.

It is not necessary that there should be a warranty by the assignor. Assignees, who become such by act of law, shall have the benefit of the covenant. 1 *Dev. & Bat.* 94; 3 *Penn. Rep.* 313, 331; 1 *Nott & McCord* 194; 8 *Pick.* 547; 1 *Maule & S.* 355; 4 *Ib.* 53; 10 *Mass.* 313; 6 *Metc.* 439.

3. The breach is sufficiently assigned. 4 *Kent's Com.* 471; 1 *Chit. Pl.* 364; 2 *Wend.* 583; 2 *Chit. Pl.* 543, 518.

THE CHIEF JUSTICE. This action is brought to recover damages for the breach of a covenant, contained in a deed of bargain and sale, of certain real estate, made by Matthias Denman, the defendant's testator, to Samuel Miller, bearing date on the 16th of January, 1833. The declaration charges, that " the said Matthias Denman did, in and by the said indenture, for himself, his heirs, executors, and administrators, covenant and grant to and with the said Samuel Miller, his heirs and assigns, that he, the said Matthias Denman, would *warrant, secure, and for ever defend* the said land and premises unto the said Samuel Miller, his heirs and assigns, for ever, against the lawful claims and demands of all and every person and persons, *freely and clearly freed and discharged of and from all manner of encumbrances whatever.*" The declaration further states, that the premises were mortgaged by Samuel Miller, the grantor, and were subsequently sold, under a decree of the Court of Chancery for the foreclosure of that mortgage, by the sheriff of the county of Essex, to Nicholas Arrowsmith, and by Arrowsmith conveyed to the plaintiff, by deed dated the 30th of September, 1835. The breach of the covenant assigned is, that Mary Pierson, the widow of Robert Pierson, who was seized in fee of the land prior to the conveyance and covenant by Denman to Miller, has recovered seizin of one third part of the said premises, for her dower therein, as the widow of the said Robert Pierson, with damages for the detention, and holds the said third part in severalty against the plaintiff.

To this declaration the defendants demur, assigning several special grounds of demurrer.

Two questions are necessarily involved in the consideration of this demurrer, viz: 1. Has the plaintiff a right of action upon the covenant set out in the declaration ? 2. If he has, is the declaration in due form ? Although the counsel of the defendant limited his argument solely to the special grounds of demurrer, yet the court cannot render judgment upon the de-

murrer for the plaintiff without affirming the declaration to be good in substance, as well as in form. It would be worse than idle to discuss and settle the *form* of pleading, if the plaintiff have no right of action whatever. Though the demurrer be special, the pleading may be avoided for defects in substance.

The plaintiff claims, as assignee of the land, against the executors of the grantor; and he claims not by deed directly from the covenantor, but through an intervening sheriff's sale. To maintain his right of action, he must show—1. That the covenant is *personal*, binding on the personal representatives of the covenantor. 2. That the covenant runs with the land, in the nature of a real covenant, and that it passed to him by the assignment or conveyance of the land.

The character, the office, and the operation of the ordinary covenants for title are well settled. They are all personal covenants, binding on the personal representative of the covenantor, and not real covenants, in the sense of the ancient feudal law. Three of them, *viz:* 1. That the grantor is lawfully seized; 2. That he has good right to convey; and 3. That the land is free from encumbrances, are strictly personal covenants. They do not run with the land or pass to the assignee. They are all in language *de presenti*, having respect to the date of the deed, and if not true, are broken as soon as made. If, at the date of the deed, the grantor is not lawfully seized, or if he has not good right to convey, or if the land is not free from encumbrances, the covenant is broken, and a right of action vests *eo instanti* in the grantee. The covenant broken becomes a *chose in action*, which, at the common law, is not assignable. The two remaining covenants of the deed, *viz.* that the grantee shall quietly enjoy, and that the grantor will warrant and defend the title, are prospective, both in their language and operations. An eviction or disturbance of possession is necessary to constitute a breach of them. They are, therefore, in the nature of real covenants; they run with the land conveyed, descend to heirs, and vest in assignees. 4 *Kent's Com.* (2d ed.) 471, cases cited in *note c.* 472, and cases cited in *note c., Bartholomew* v. *Candee,* 14 *Pick.* 168; *Wheelock* v. *Thayer,* 16 *Pick.* 68; *Thayer* v. *Clemence,* 22

Carter -v. Executors of Denman.

*Pick.* 494; *Clark* v. *Swift,* 3 *Metc.* 390; *Tabb* v. *Binford,* 4 *Leigh* 132; *Chapman* v. *Holmes,* 5 *Halst.* 20; *Garrison* v. *Sand-ford,* 7 *Halst.* 261; *Lott* v. *Thomas, Penn.* 406.

And to maintain an action on the covenant of *warranty* or for *quiet enjoyment,* it is not enough that there is a defect of title, or that the grantor had not a right to convey, or that there are outstanding encumbrances. There must be an eviction, or what is tantamount to an eviction, by title paramount to the plaintiff's, originating before or at the time of the grant to the plaintiff. *Waldron* v. *McCarty,* 3 *J. R.* 471; *Kent* v. *Welch,* 7 *J. R.* 258; *Kortz* v. *Carpenter,* 5 *J. R.* 120; *Vanderkarr* v. *Vanderkarr,* 11 *J. R.* 122; *Kerr* v. *Shaw,* 13 *J. R.* 236; *Webb* v. *Alexander,* 7 *Wend.* 281.

An actual eviction, however, *by process* of *law,* has been held, in recent cases, not necessary to sustain an action, either upon a covenant of warranty or for quiet possession. Thus, in an action upon a covenant of warranty, it was held sufficient that the covenantee had brought an action to recover possession, and had failed, or that there was in fact a superior title, which was asserted by offering the premises for sale, and to which the covenantee had yielded and purchased the title. *Pitman* v. *Leavitt,* 13 *Verm.* 379; *Loomis* v. *Bedel,* 11 *New Hamp.* 74.

So if, on a valid claim being made under a title paramount, the plaintiff voluntarily yield up possession. *Greenvault* v. *Davis,* 4 *Hill* 643.

All the cases, however, go upon the ground, that, to sustain an action upon either of the two last mentioned covenants, there must be either an actual eviction, or a disturbance of title or possession by paramount title, tantamount to an eviction.

If, however, there be an ouster or eviction of the plaintiff from a part of the premises, it is enough to maintain the action. *Marston* v. *Hobb,* 2 *Mass.* 438; *Gore* v. *Brazier,* 3 *Mass.* 545; *Townsend* v. *Executors of Van Courtland,* 6 *Cowen* 123.

Inasmuch as the covenant runs with the land, it is immaterial whether it pass by deed from the grantor or by a sheriff's

sale. The sheriff's deed, under our statute, passes all the interest of the mortgagor at the date of the mortgage, or, if made under a judgment at law, it passes all his interest at the rendition of the judgment. He is as much the assignee of the covenant as though the conveyance were made by the covenantee himself. *McCrady* v. *Brisbane*, 1 *Nott & McCord* 104.

The covenant set out in the declaration is peculiar. It is that the covenantor will *warrant, secure, and for ever defend* the land and premises against lawful claims, fully and clearly *freed and discharged of and from all manner of encumbrances whatsoever*. Is that a covenant of warranty, or is it merely a covenant against encumbrances? If the latter only, it is not assignable, and the plaintiff can have no right of action under it.

It is clear that the encumbrance, by virtue of which the plaintiff has been evicted, existed at the date of the deed from Denman to Miller.

*Dower* is an encumbrance, and its existence is a breach of a covenant against encumbrances. So is any outstanding life estate or term of years. Every right to or interest in the land granted to the diminution of the value of the land, but consistent with the passing of the fee, must be deemed in law an encumbrance. *Mitchell* v. *Warner*, 5 *Conn.* 497, 527.

There is an anonymous case, decided at Mich. term, 29 Eliz., reported by *Sir Francis Moore*, 249, *pl.* 393, as follows: " One made a lease for years. The lessee devised the term to his wife, for as many years as she should live, and then to his son. The woman purchased the inheritance, and then sold, with covenant that the land was discharged of all former encumbrances, and gave bond to perform the covenants. The woman died before the expiration of the term. The son claimed the term. In debt on the covenant, it was adjudged that the possibility in the son was a forfeiture of the obligation of the wife, because it was an encumbrance.

So a term is devised to A. for life, in case she lives sole, and after to B. A. purchases the inheritance of J. S., who covenants to discharge the tenement of all former charges, and afterwards A. marries. Upon this B. enters. A. sues J. S. upon

the covenant, and adjudged that it lies, for that this possibility to have the residue of the term upon A's marriage, is a former charge. For the will was before the covenant, and the *possibility* shall awake, and have relation before the marriage. 14 *Viner's Ab.* 352, *" Encumbrance" A.*

Nor does dower become an encumbrance only after the death of the husband. An inchoate right of dower is a subsisting encumbrance, and not a mere possibility or contingency, which is to be deemed an encumbrance only when it becomes consummate. *Porter* v. *Noyes,* 2 *Greenl.* 22 ; *Jones* v. *Gardner,* 10 *J. R.* 266 ; *Prescott* v. *Trueman,* 4 *Mass.* 627.

So that the claim of dower of Mary Pierson was a subsisting encumbrance upon the premises, and not a mere possibility at the date of the deed from Denman to Miller, although her husband was then living, and continued to live till after the plaintiff acquired title. If, then, the covenant in question is a mere covenant against encumbrances, it was broken as soon as made, and, being a mere chose in action, was not assignable.

But the covenant in question is more than a mere covenant against encumbrances. The grantor covenants not that he will warrant that the premises are free of encumbrances, but that he " will warrant and for ever defend the premises against all lawful claims, freed and discharged of all encumbrances." The language of the covenant is prospective, not *in presenti ;* he *will* warrant and *for ever* defend. The first clause is clearly a general covenant of warranty of the most comprehensive and explicit character. The second clause of the covenant respecting encumbrances, if it do not enlarge, cannot narrow the operation of the covenant. In its operation, it can be no more than a covenant against encumbrances, joined with a covenant of general warranty. This was the construction given to a somewhat similar covenant by the Supreme Court of New York, in *Hall* v. *Dean,* 13 *J. R.* 105.

Regarding the deed as containing these two covenants, it is clear that the covenant against encumbrances was broken immediately on the execution of the deed. The mere existence of the inchoate right of dower was a breach of that covenant. The covenantee was at liberty to sue for damages for a breach

of the covenant upon the mere existence of the encumbrance, in which event his damages would have been nominal merely ; or he might have satisfied the claim for dower at a fair price, and the price thus paid would have been the measure of damages. *Prescott* v. *Trueman*, 4 *Mass.* 627 ; *Delavergne* v. *Norris*, 7 *J. R.* 358 ; *Bean* v. *Mayo*, 5 *Greenl.* 95 ; *Garrison* v. *Sandford*, 7 *Halst.* 261.

The right of action upon that covenant remained in the grantee, and did not pass by the assignment. And if the encumbrance had remained outstanding against the premises, without being enforced, no action could have been maintained by the assignee on account of its existence. He could have maintained no action on the covenant against encumbrances, for it did not pass by the assignment ; nor on the covenant of warranty, for that covenant is broken only by an eviction. But the dower is no longer a mere encumbrance. The doweress has enforced her claim. The plaintiff has been evicted from part of the premises by legal process. The covenant of warranty is therefore broken, not by the existence of the encumbrance, but by the eviction of the plaintiff. The ground of action upon the two covenants, though *originating* in the same cause, to wit, *the dower*, is quite distinct. The action upon the covenant against encumbrances is founded upon the existence of the encumbrance ; the action upon the covenant of warranty is founded upon the *eviction* of the plaintiff. In the one case, the cause of action arises, and the statute of limitations begins to run from the eviction, in the other from the date of the covenant. The encumbrance by dower is precisely analogous, in this respect, to an encumbrance by mortgage. The existence of the mortgage is a breach of the covenant againt encumbrances ; and if the mortgage be foreclosed, and the grantee evicted, there is a breach of the covenant of warranty. The original grantee may have his remedy upon both of the covenants, or either. The assignee can have his remedy only for the eviction. *Delavergne* v. *Norris*, 7 *J. R.* 358 ; *Heath* v. *Whidden*, 11 *Shepley* (24 *Maine R.*) 383 ; *Clark* v. *Swift*, 3 *Metc.* 390.

In *Heath* v. *Whidden*, the action was upon a warranty

deed, with the usual covenants, made by the defendant to the father of the demandants. At the date of the deed, the premises were subject to a mortgage, by virtue of which the plaintiffs had been evicted. The action was founded upon a breach of the covenant against encumbrances. And the statute of limitations being set up in bar, the court permitted the plaintiffs to amend their declaration, so as to ground their action upon the eviction. The court say, " it is in the election of the subsequent grantee of the mortgagor, with covenants against encumbrances and for quiet enjoyment, to elect to redeem, as under the former, or to suffer an eviction, as under the latter. If he redeems, his right of action will commence from the time of such redemption. If he waits for an eviction, his right of action will then take place." The position, that if the covenantee redeem, his right of action under the covenant against encumbrances will then take place, if that were intended, is clearly erroneous. The right of action accrues immediately on the making of the deed. The redemption merely determines the damages to which the plaintiff is entitled.

In the present case, the covenant upon which the action is founded being a covenant of warranty, which passed by assignment, and a breach of the covenant being shown by the allegation of an actual eviction of the plaintiff from part of the premises by process of law, the plaintiff shows in himself a substantial cause of action.

It remains to inquire whether the declaration is sufficient, in point of form, in the several particulars assigned as the grounds of special demurrer.

1. It is not necessary that the premises conveyed by the deed should be particularly described. It is true that the covenant passes with the land, and that the premises must be designated. They are so with convenient certainty, by a general description and by reference to the covenant in which they are described. In this respect the declaration conforms to approved precedents.

2. It is not necessary to aver formally that the plaintiff is the assignee of the covenant. The facts, which in law constitute him the assignee, to wit, that the title of the land, with

which the covenant runs, is vested in the plaintiff, are set out with clearness, precision, and certainty. This is all that is essential in good pleading. It is not necessary to aver a mere inference or conclusion of law.

2. The statement of the breach must necessarily be governed by the nature of the covenant. To assign the breach negatively or affirmatively in the words of the covenant, or in words coëxtensive with the import and effect of it, will in many cases, but not always, be sufficient. Where the covenant is to do or forbear a particular act, it is sufficient to assign the breach in the words of the contract. So in an action upon the usual covenants of a deed, that the grantor is seized, or that he has good right to convey, it is sufficient to assign the breach generally, by averring that the grantor was not seized, or that he had not good right to convey. But in an action upon a covenant of warranty, it is not enough to aver, in the negative of the covenant, that the grantor did not warrant and defend the premises. The declaration must go farther, and show an eviction by a person having lawful title paramount to that of the plaintiff. And the same rule applies to covenants for quiet enjoyment and against encumbrances. 1 *Chit. Pl.* (7th ed.) 365, 368 ; *Platt on Cov.* 308, 311, 328 ; *Mitchell* v. *Warner*, 5 *Conn.* 497 ; *Townsend* v. *Morris*, 6 *Cowen* 123.

The concluding clause of the assignment of the breach, " and so the plaintiff in fact saith, that the defendants have not kept the said covenant," &c., is merely formal and unnecessary. The breach had already been fully and specifically assigned. 1 *Chit. Pl.* (7th ed.) 409.

Nor is it necessary to aver a breach of the covenant by Denman, or that the covenant was not kept by him. The breach occurred after his death. The facts stated in the declaration, if true, make it abundantly clear that the covenant was broken. The action is against the executors, and the formal averment, that they refuse to keep the covenant, is enough.

The declaration conforms to approved precedents in all the particulars specially assigned as grounds of demurrer. 5 *Wentworth's Pl.* 53, 63 ; 2 *Chit. Pl.* (7th ed.) 543, 545, 546, 519,

Let the demurrer be overruled, with leave, if desired, to the defendant to plead upon the usual terms.

NEVIUS, J., concurred.

OGDEN, J. The facts set out in the count demurred to are as follows: That, on the 16th of January, 1833, Matthias Denman conveyed to one Samuel Miller, by deed with a covenant, as well of warranty as against encumbrances, a tract of land in Springfield, in the county of Essex, in this state. That, on the 4th day of September, in the same year, Miller, the grantee, together with his wife, mortgaged the premises to Nicholas Arrowsmith and Eleanor Wilson, executors of the last will of James Wilson, deceased, to secure the sum of $1500, with interest, in one year from the date of the deed of mortgage. That, on the 3d of October, 1844, the mortgagees filed their bill for a foreclosure of the equity of redemption in the said premises, and for a sale; and that, on the 23d of June, 1845, the sheriff of the county of Essex, in pursuance of an execution issued in the suit, conveyed the said premises unto Nicholas Arrowsmith; and that, on the 30th of September, 1835, Arrowsmith conveyed them to the present plaintiff, who entered upon the possession. That, prior to the conveyance by Denman to Miller, one Robert Pierson, the husband of Mary Pierson, had, during their coverture, been seized in fee of the said premises. That, on the 1st of February, 1847, and after the decease of Denman, the said Robert Pierson died; that Mary Pierson survived him, and that, by due course of law, she has recovered her dower in the said premises, and has been put in possession thereof in severalty, and that the plaintiff has thus been evicted of a third part of the premises, by metes and bounds.

The present action is brought by the transferee from Arrowsmith, upon the covenant of warranty contained in the deed from Denman to Miller, against the executors of Denman. A special demurrer has been filed by the defendants.

Upon a careful examination of this case, and of such of the numerous authorities cited in the argument thereof, as have been within my control, I am of opinion—

*First.* That the plaintiff being in possession, as a transferee from the purchaser of the premises in question, when sold under an execution upon the decree of foreclosure and sale, is *in* of the same estate as *Miller* was when he executed and delivered the mortgage to Wilson's executors.

*Second.* That the said mortgagor would have been entitled to a recovery, in an action upon the covenant of warranty, against Matthias Denman, if then living; or if then dead, against his personal representatives, if the eviction, which is set forth in the declaration in *this* cause, had taken place while he, the mortgagor, owned the premises.

*Third.* That the estate of dower, not becoming complete in Mary Pierson until after the decease of Matthias Denman, and also after the plaintiff had purchased the whole premises conveyed in Denman's deed with warranty, and had entered upon the possession thereof, the breach of covenant *now* complained of did not happen during the ownership or possession of any alienee intermediate from Denman; and hence, if the present plaintiff cannot successfully maintain an action against the personal representatives of Denman, the covenant will be entirely avoided, although a right, which was an encumbrance when the covenant was made, and which has ripened into an estate in a third part of the premises, paramount to that which Denman had therein at the time of his alienation, was *then* inchoate.

*Fourth.* That the covenant of warranty, which runs with the land, vested in the plaintiff as an incident to the land conveyed to him, without any formal assignment of it; and hence, that an averment of an assignment was not required for a good count. It follows, from the facts stated, and it need not be otherwise set out or proved.

*Fifth.* That the declaration is sufficient, and is not obnoxious to any of the objections that are alleged against it in the special causes of demurrer shown.

The result of my examination is, that, in my judgment, the plaintiff has a good cause of action on the covenant of warranty declared upon against the defendants, as executors of Matthias Denman, deceased, and that the demurrer should be overruled, with costs.

Cited *in Kellog* v. *Platt,* 4 *Vr.* 330; *Andrews* v. *Rue.* 5 *Vr.* 406 . *Beat* Ex'r v. *Storm,* 11 *C. E. Gr.* 376; *Wheeler* v. *Kirtland,* 12 *C. E. Gr.* 535